BORDER CITY ICE AND COAL COMPANY *v.* ADAMS.

Opinion delivered April 13, 1901.

CONTRACT—DAMAGES.—An ice company obligated itself to supply ice to a local dealer at a fixed price for the entire season, but after July 17 failed to do so, whereupon the dealer continued his business by purchasing of other parties until August 20, when he was compelled to abandon his business on account of inability to purchase ice. *Held,* that plaintiff was entitled to recover (1) the difference between the price paid to others and the contract price, and (2) the daily profit which he would have earned up to the end of the season, had he not been compelled to abandon his business.

Appeal from Sebastian Circuit Court.

H. C. MECHEM, Special Judge.

*Winchester & Marlin,* for appellant.

Evidence of prospective profits is not admissible to prove damages for breach of contract. 57 Ark. 203; 7 Hill, 61; 139 U. S. 169; 34 N. Y. 634; 71 N. Y. 133; 36 N. J. L. 262; 38 *id.* 496; 139 U. S. 199; 78 Ala. 249; 16 N. Y. 489. The damage growing out of loss of profits was too remote, and the amount too contingent and uncertain, to admit of recovery therefor. 110 U. S. 238; S. C. 28 Lawy. Ed. 198; 3 L. R. A. 587; 19 Ga. 416; 139 U. S. 199; S. C. 35 Lawy. Ed. 147; 30 Ga. 560; 47 Ark. 527; 34 Ark. 710; 48 Ark. 502-10; 55 Ark. 331; 16 N. Y. 489; 13 Mo. 517; 32 Mo. 305; 78 Ala. 249; 94 Ala. 626; 106 Mich. 542; 58 Ill. App. 519; 86 Ill. 215; 49 Tex. 260; 56 Tex. 149; 8 Am. & Eng. Enc. Law (2d Ed.), 620; 1 Sedgw. Dam. 108; 1 How. 28; 100 U. S. 500, 507; 19 Wall. 37; 9 Ex. 341, 354, 356.

*Hill & Brizzolara,* for appellee.

The loss of profits was recoverable. 22 Kans. 374; 92 Fed. 293; 12 N. W. 640; 139 U. S. 199; 153 U. S. 540; 106 Pa. St. 237; 58 Ill. App. 519; 56 Kan. 614; 48 Ark. 502; 16 N. Y. 489; 71 N. Y. 118; 22 Kan. 374; 43 Kan. 267; 56 Ark. 309; 52 Ark. 246; 54 Ark. 216; 1 Sedgw. Dam. § 182; 42 Pac. 706; 33 S. W. 835; 49 Ill. 219; 52 N. W. 609; 11 Mich. 542; 62 Mo. 171; 43 Kans. 272; 12 N. W. 640; 14 Mich. 34; 52 N. W. 609; 101 N. Y. 205; S. C. 4 N. E. 269; 3 L. R. A. 587; 5 Laws. Rights, Rem. & Pract. § 2623; 8 Am. & Eng. Enc. Law (2d Ed.), 620-624.

BUNN, C. J. This is a suit for damages growing out of a breach of a contract for the sale and supplying of ice during the season of 1896, brought by the appellee, Adams, against the appellant, the Border City Ice and Coal Company, in the Sebastian circuit court, Fort Smith district, on the 7th day of October, 1897. Trial by a jury, and judgment for plaintiff for the sum of $422.10, with interest on $325 of same from October 1, 1896, and on the remainder, $97.10, from July 17, 1896, at 10 per centum per annum, and defendant appealed.

The suit was for a breach of the following contract, to-wit:

"March 28th, 1896.

"In consideration of receiving all of your orders for ice in car lots during the season of 1896, we agree to furnish your entire requirements of ice in fifteen ton shipments at four and no hundred dollars per ton delivered at Muskogee, I. T., and to keep you

promptly supplied on thirty-six hours' notice.   Should the general price of ice decline, or any *bona fide* competitors shade this price, we agree to give you the benefit of such lower price as prevails on purchases made while such lower price is in force.

[Signed]                "BORDER CITY ICE & COAL COMPANY,

"Per W. O. Caldwell, Mgr."

The contract made on the day named and on the terms set forth therein was performed by both parties up to the 17th day of July, 1896, when, by reason of an accident to its machinery, the appellant company ceased to fulfill its part of the contract, and never again offered or undertook to do so, the appellee having ceased to carry on the local ice business at Muskogee on the 20th August, 1896, having been forced to do so, as he claims, by the said failure of appellant to perform its part of the contract.   The proof tends to show that the appellant was a manufacturer of and wholesale dealer in ice in the city of Fort Smith, Arkansas, and by the contract sued on had engaged to furnish ice, as stated in the contract, to the appellee, a local and retail dealer in ice, in Muskogee, in the Indian Territory; and that the former ceased to comply with its contract from and after the 17th day of July, and that, by making other temporary arrangements and purchasing elsewhere, the latter continued to carry on the local ice business until the 20th August, 1896, when, as stated, by the default of the former, he was compelled to close out.

The contention of the appellee is that he was actually damaged from the 17th of July until the 20th August in an amount equal to the difference of what he was compelled to pay for ice purchased from other parties and what he would have had to pay appellant had he continued to furnish him; that is, the contract price.   The instructions of the court and also the findings of the jury sustained this contention, and there is no reason why the verdict and judgment on this part of the case should not be sustained.

As to the damages for loss of profits that would have accrued after the 20th August and until October, 1896, when the contract season closed, a more difficult question is presented.   The difficulty is not so much in determining whether or not the appellee has a cause of action for his damages by reason of loss of profits which he would have enjoyed had appellant fulfilled its contract, but rather in determining with any degree—that is, with the

proper degree—of certainty the amount of such damages, and how to measure them.

In *Allis* v. *McLean*, 12 N. W. Rep. 640, the supreme court of Michigan, speaking by Judge Cooley, said: "We had occasion in *McEwen* v. *McKinnon,* 11 N. W. Rep. 828, decided at the last term, to pass upon a question much like the one which arises here. In that case, as in this, a mill-owner had contracted for machinery to be furnished by a specified day, and he sought to recover profits lost by reason of his mill lying idle, as damages for the failure to perform the contract in time. It seems reasonable that where profits are thus lost the defaulting party should make them good, for the machinery is purchased with a view to the profits, and the contract would not be entered into if the profits were not expected and counted upon. But the difficulty in measuring damages by profits is that they are commonly uncertain and speculative, and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach of contract. When that is the case, they are said to be too remote; and the damages must be estimated on a consideration of such elements of injury as are more directly and certainly the result of the failure in performance.

"But in some cases profits are the best possible measure of damages, for the very reason that the loss is indisputable, and the amount can be estimated with almost absolute certainty. The case of a contract for the delivery of grain or any other article which at all times finds a ready sale at a current price is an instance; if the contract is not performed, the purchaser may recover the advance beyond the purchase price; and this, though not recovered under the name of profits, will be dependent upon the performance of another; and if the second contract is broken, the loss of definite and fixed profits is really nothing else. It often happens also that one contract, the performance of which will result in certain and definite profits, will be dependent upon the performance of another; and if the second contract is broken, the loss of definite and fixed profits under the other is a necessary and immediate consequence. There is no difficulty in saying in some cases that profits lost are the proper measure of damages." [Citing many cases.] The facts in that case determined against the claim for damages on account of the loss of profits, for the reason, as given by the court, that "the profits of running a sawmill are proverbially uncertain, indefinite and contingent." The same doc-

trine is announced in *Central Trust Co.* v. *Clark*, 92 Fed. Rep. 294, and indeed there seems to be no real difference in opinion on the subject, when considered as an abstract proposition of law; but the trouble is in the application of the rule of law to the facts of each case as they are presented for consideration.

The elements of uncertainty growing out of the occurrences after the 20th of August (for the appellee has fairly shown, we think, that he was compelled to close out his business on that day by reason of the failure of the appellant to comply with its part of the contract) could only be the inability of the appellee to carry out his part of the contract, had the breach not been committed by appellant, and the probable varying conditions of demand for ice from that time until the close of the contract season —the 1st October,1896.

The evidence shows that the appellee, while the contract was being carried out, was making a reasonable profit in the business, and was even making a daily profit of $15, when the appellant ceased to furnish him with ice, and he was compelled to purchase at $6 per ton up to the very time he closed out; and that his closing out was occasioned by his inability to procure ice from any source known to him.

The question is one by no means free of doubt. But we cannot assume that appellee would have ceased to do business had it not been for the default of appellant and his inability to procure ice elsewhere for his trade; nor can we conclude from the evidence that he could have resumed the business after he closed out on the 20th August, and before the 1st October, the end of the season, when the contract would have expired by limitation. It follows that the appellee had his right of action for the loss of the profits.

The extent of that loss—the measure of damages—we think, though involved in much doubt, was susceptible of proof, substantially, and there was sufficient proof to sustain the verdict of the jury.

These are both questions of fact, more or less, and as we find no objection to the instructions of the court, we do not think the verdict and judgment should be disturbed.

Affirmed.