## MEGERT v. BAUMAN.

No. 35058.   July 8, 1952.

*246 P. 2d 355.*

Meacham, Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Owen F. Renegar, Oklahoma City, for defendant in error.

HALLEY, V. C. J.   Albert Bauman sued Oscar Megert in the district court of Washita county for damages for breach of contract and to recover for services rendered in harvesting wheat belonging to defendant. The case was tried to a jury, which found for the plaintiff in the sum of $1,700, and the defendant has appealed.   The parties will be referred to as they appeared in the trial court.

In February, 1948, plaintiff and defendant entered into an oral agreement to purchase a Massey-Harris combine for the purpose of engaging in custom harvesting operations, to begin each season at the south end of the wheat belt and to work through the harvesting season to the north end of the belt. Plaintiff agreed to furnish a car and defendant a truck to be used in their operations. They were to own the combine in equal shares, and to share equally the expenses and profits from cutting and hauling with the truck belonging to defendant. Plaintiff was to use his car in securing contracts for cutting and other purposes.

About June 3, 1948, they took their machine to Burkburnett, Texas, and made a profit of $465 cutting one field. Other fields were available there, but defendant decided to take the machine back to his farm in Washita county, where they cut his crop, and he paid plaintiff $300 as his half of the profits from this operation. They cut for certain neighbors and netted $180 on one job, $123 on another, and $140 on another. There being no further work in

that vicinity, the plaintiff then went to Liberal, Kansas; where he contracted to cut a large crop; but defendant refused to go to Kansas, and refused to go farther north, claiming that he had learned by telephone that there was an excess of combines in that area and had been advised not to come to Kansas.

Near the beginning of the 1949 season, plaintiff secured an acreage in Tillman county, but defendant insisted that his own crop be harvested first. This was done at a net charge of $1,250 the plaintiff's half being $625, which is one of the items sued for in this action. Defendant declined to do more cutting in the 1949 season because he had to return to his farming. Defendant testified that on account of a skin disease he had been advised to keep away from gasoline and oil, but offered to furnish a man in his place. Plaintiff denied the latter, and testified that defendant failed to assist him in going north with the machine. Nothing further was done in the 1949 season, the plaintiff being financially unable to take the machine north at his own expense.

When they failed to go north, they had a settlement. The defendant assumed and paid the balance of the Bauman note of $3,100 at the bank, and took over Bauman's half interest in the combine. He claims that this was a complete settlement, but plaintiff says that Megert still owes him $625 for his half interest in the profit from cutting defendant's 1949 crop.

Defendant relies upon two propositions. He claims that the evidence is insufficient to support the judgment, and that the court erred in giving instructions 2 and 3.

Sec. 21, Title 23, O.S. 1951, provides that damages arising from the breach of a contract are generally "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of events, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."

The argument of defendant under the first proposition is based largely upon the theory that the contract between the parties is so indefinite and uncertain as to be unenforceable. It is claimed that the duration of the contract is not certain; that it is lacking in certainty as to how long they would operate each season; and that plaintiff seeks to recover future or anticipated profits not sufficiently supported by any evidence to justify the judgment rendered.

There are cases holding that future profits may not be recovered, generally based upon the finding that such profits cannot be fixed with any degree of certainty. However, in the early case of Fort Smith & Western Ry. Co. v. Williams, 30 Okla. 726, 121 P. 275, this court recognized the rule that future profits may constitute the measure of damages for breach of contract, and announced the rule as follows:

"If the amount of earnings or profits can be estimated with a reasonable degree of accuracy, they then become the most just and adequate measure of damages."

In Ash v. Charles F. Noble Oil & Gas Co., 96 Okla. 211, 223 P. 175, it was said:

"A person damaged by a breach of contract and thereby deprived of anticipated profits may recover such profits as damages where the same may be established with a reasonable certainty, and such profits were contemplated by the parties on the date of the execution of the breached contract."

It is clear from the evidence that a profit from the operation of the combine was within the contemplation of the parties when they agreed to buy the machine for $6,200, all of which was borrowed from the bank. Plaintiff had no crop to harvest. Defendant had

wheat of his own to be harvested. Their objective was to do custom cutting, from which they clearly anticipated a profit.

The testimony of plaintiff as to the profits made in 1948 was not disputed. He testified that in four or five days in Texas they made a net profit of $465; in about a day and a half they cleared $180; in another day and a half they cleared $123; and they made $140 profit in about another day and a half, or an average profit of from $70 to $120 per day.

W. O. Cannon, who operated a similar machine in 1948 and 1949 across the same grain belt intended to be crossed by plaintiff and defendant, made a profit of $3,026.50 in 1948, operating for about one month. In 1949 he harvested for the entire season and made a profit of $4,976.17. The witness Lohden testified that a machine like the one of Megert and Bauman should make a profit of from $2,000 to $2,500 per season in the territory where the parties intended to operate.

Defendant contends that the contract is not enforceable because no definite term was fixed. No term was established by the evidence, but by common consent of the parties the contract was enforced for the 1948 and 1949 season. Defendant denies that he refused to operate over the wheat belt in 1949, but says that he offered to send a man in his place to go with the plaintiff. This action seeks damages only for the time the contract was in effect between the parties by agreement.

No profits could accrue while the combine stood idle during most of the 1949 season. While they operated in Texas and locally in Oklahoma in 1948, the plaintiff was able to pay $400 on the principal of his purchase-price note.

It is not necessary that profits be established with absolute certainty and barring any possibility of failure. It is only required that it be established with reasonable certainty that profits would have been made had not the contract been breached. There is competent evidence to support the findings of the jury, both as to profits and as to the amount due plaintiff for his share in harvesting defendant's 1949 crop.

Defendant complains of instructions 2 and 3, which are as follows:

"Instruction 2. If you find for the plaintiff, under these instructions and by a preponderance of the evidence, then his recovery would be limited to what the evidence shows his loss to be from one-half of the profit, less the expense of operation, the combine would earn, if any, during the time sued for, and in determining this you may take into consideration the evidence the net earning during the time sued for, of similar size and make and model Massey Harris combine operating at the same time in the same communities under like or similar conditions and circumstances and you may take in consideration your own knowledge and experience of similar combines and custom harvesting under similar conditions and circumstances.

"Instruction 3. Now, therefore, bearing in mind these instructions, if you find and believe from a preponderance of the evidence that during the 1948 and 1949 wheat harvest, or either year thereof, the plaintiff and defendant agreed to use the Massey Harris combine in which the plaintiff and defendant each had one-half interest, for custom harvesting to begin at the south end of the grain belt and working north during the wheat harvest season and that the defendant failed, refused and neglected to perform his part of the agreement and that by reason thereof the plaintiff was damaged due to the failure of the combine to operate, then your verdict should be for the plaintiff for such sum in damages as shown by the evidence, if any, the plaintiff has sustained due to a loss of his half of the profits from the operation of said machine, if any, and not to exceed in actual damage the amount of $5000.00 for the 1948 season and not to exceed $4625.00 actual damage for the 1949 season, and not to exceed all together

"$9625.00 actual damage from the defendant herein."

The only serious objection to instruction 2 lies in the last clause, which tells the jury, "and you may take in consideration your own knowledge and experience of similar combines and custom harvesting under similar conditions and circumstances." We agree that this portion of the instruction is erroneous, in that instead of advising the jury that they might take into consideration their own knowledge and experience in similar combines and custom harvesting, it should have told them that in reaching a verdict they might use such general knowledge and experience as they possess with mankind in general.

No Oklahoma case on this question is cited, and we have found none. The general rule is announced in 53 Am. Jur., §819, as follows:

"Since, as a rule, jurors may not consider facts within their personal knowledge, to instruct them that they may do so is error."

In Hoeft v. State et al., 221 Iowa 694, 266 N. W. 571, 104 A.L.R. 1008, the Supreme Court of Iowa said:

" 'It is highly improper for any of the jurors to consider and found a verdict upon the special knowledge or observation of some of its members. The authorities are but one way upon this proposition. * * *'

"It may be that the court only intended to permit the jury, in arriving at their verdict, to use the knowledge and experience they might possess 'in common with mankind in general'; but this was far from the meaning expressed in the language used in the instruction given, which directed the jury to take into consideration their own knowledge of the values of the property which is subject to the litigation pending before them. It is not proper to permit them to use or act upon any special knowledge they may have upon the value of the very property in question, in arriving at a verdict."

Plaintiff contends that it was the duty of defendant to request a proper instruction to cure the error above mentioned. We cannot agree with this contention. The instruction is erroneous, but that does not mean that the error misled the jury or resulted in a miscarriage of justice. In Labenne v. Kaufman, 184 Okla. 565, 89 P. 2d 281, it is said in the second syllabus:

"Before the court will reverse a case because of the giving of an instruction, it must clearly appear that the instruction complained of has caused a miscarriage of justice."

Defendant claims that instruction 3 misstates the measure of damages. This instruction clearly tells the jury that any finding for the plaintiff shall cover his half of the profits lost, and that the plaintiff cannot recover in excess of the amount sued for, and that "your verdict should be for the plaintiff for such sum in damages as shown by the evidence, if any, the plaintiff has sustained due to a loss of his half of the profits from the operation of said machine * * *." We think instruction 3 fairly states the law.

Our reason for holding that instruction 2 did not mislead the jury is based upon our belief that the average juror could not distinguish readily between such information as is possessed by all men in general, and the information that he may have obtained personally through some experience in dealing with matters similar to those involved.

In view of our conclusions, the judgment is affirmed.

WELCH, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. O'NEAL, J., dissents.