**GROENDYKE TRANSPORT, INC.,**
Plaintiff in Error,

v.

**Hal·MERCHANT, Defendant in Error.**

No. 39264.

Supreme Court of Oklahoma.

Feb. 6, 1962.

Rehearing Denied March 12, 1963.

Second Petition for Rehearing Denied
April 30, 1963.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Marcellus F. Priebe, Enid, Jerome Sullivan, Duncan, for plaintiff in error.

Harry Johnson, Oklahoma City, James F. Bennett, Duncan, for defendant in error.

HALLEY, Justice.

Hal Merchant (plaintiff) and Groendyke Transport, Inc. (defendant) entered into a written agreement whereby plaintiff leased certain motor vehicle equipment to defendant for a term of five years beginning July 1, 1957. The parties made a simultaneous oral agreement for a like term whereby plaintiff would serve as defendant's representative and terminal manager at Duncan, Oklahoma. Plaintiff's income was provided for in the written agreement as a certain percent of the gross revenue produced by plaintiff's equipment less expenses of operating the equipment.

Under date of May 29, 1958, defendant wrote a letter to plaintiff terminating the written and oral agreements as of July 1, 1958. Plaintiff received income in the form of net profits under the terms of the written agreement to July 1, 1958. Shortly thereafter he filed suit for damages for the breach of contract by defendant. In his amended petition he sued for $93,544.96 on his first cause of action for loss of future profits, and he sued for $57,629.57 as a second cause of action for loss suffered in selling his motor vehicle equipment.

Jury was waived and the action tried to the court. Judgment was entered in favor of plaintiff on his first cause of action for $84,989.32 and in favor of defendant on plaintiff's second cause of action. Each party filed a motion for new trial which motions were overruled. Plaintiff did not appeal, but defendant appealed from the judgment and order overruling its motion for new trial.

We find that the contract between plaintiff and defendant was partly oral and partly written. The parties here agree that such a contract is valid and will be enforced. We have said as much in Packard Oklahoma Motor Co. v. Funk, 117 Okl. 96, 245 P. 571:

> " * * * There can be no question about the right of parties to enter into an oral contract, a written contract, or a contract partly in writing and partly parol."

Defendant states that the trial court erred in allowing plaintiff to recover judgment when the evidence indicates that plaintiff breached the contract first by neglecting to perform the duties as terminal manager. Overlooked by defendant is the evidence which plaintiff presented to dispute this. Defendant's letter to plaintiff terminating the contractual relationship made no specific reference to plaintiff's performance of assigned tasks but simply said that the termination was "for economic reasons and for other reasons." Plaintiff immediately contacted defendant's executive vice-president and general manager who advised him that he (plaintiff) "was carrying on the work all right" and "was a good man," but that defendant had decided to move its own trucks and manager into the location.

Whether plaintiff himself breached the contract was a question of fact for the trial judge in this jury-waived case. His general finding in favor of plaintiff indicates he found against defendant on this

issue. We find that there was competent evidence tending to support the judgment and that there was no prejudicial error. See cases cited in 2A Okl.Dig., Appeal and Error, ⊕1008(2).

■ Defendant next contends that the trial court failed to give effect to paragraph number three of the written lease agreement which provided as follows:

"3. That Lessee is engaged in the transportation of petroleum and petroleum products and other commodities in bulk, and operates other equipment similar to that hereby leased, and the business of Lessee fluctuates from time to time, so that it may not be possible, or practical, at times to keep all equipment in operation to the extent of its maximum utilization; but that so far as the equipment hereby leased is concerned, the Lessee will attempt to keep it in operation on a reasonably prorata basis, taking into consideration the total number of units it has in operation, the sum total volume of business available, and the areas in which it operates."

Defendant presented evidence that plaintiff's equipment on a per unit basis created gross income of approximately twice the per unit average of the remainder of the units owned and operated by defendant. Attempt is then made to analyze plaintiff's net income under the first year of the contract to show that if his equipment were used on a pro-rata basis during the remaining four years of the contract term, plaintiff would realize little, if any, net income.

This line of reasoning would be well and good if plaintiff and defendant had closely adhered to paragraph three of the written agreement during the first year. This they did not do. Nor did the contract require them to do so. It provided only that defendant should "attempt to keep it (equipment) in operation on a reasonably pro-rata basis." The trial court could properly find that the method of pro-rating to be considered in awarding damages for the four years following the breach would be the same as that actually used by the parties during the first year's operations. Defendant cites many cases, but none are in point on the facts and we are not persuaded by defendant's argument that the trial court erred in failing to use defendant's theory on this phase of the case.

Defendant's final contention relates to the amount of damages allowed by the trial court. The evidence of net profits to the plaintiff under this contract and a previous one with defendant might indicate that plaintiff's profits were declining. For example during the calendar years of 1956 and 1957 plaintiff's net profits were $26,005.65 and $20,786.83 respectively. Other evidence establishes that net profits in such an enterprise are subject to fluctuation, both up and down. Plaintiff argues with just as much validity that such figures merely indicate a criterion or yardstick by which to measure his loss of future profits. In that light, they indicate an average net profit of $23,396.24 per year during the last two calendar years before the breach. Defendant's own evidence proved that plaintiff's net profit during the one year under the contract here in controversy from July 1, 1957, to June 30, 1958, was $23,347.33. Such a figure is strikingly close to the annual average figure proved by plaintiff.

■ Defendant believes the trial court relied on conjecture and speculation in reaching a decision as to the amount of damages and thereby erred. Defendant relies solely on Syllabus 3 of the Court in Bokoshe Smokeless Coal Co. v. Bray et al., 55 Okl. 446, 155 P. 226:

"As a general rule, anticipated profits of a commercial or other like business are too remote, speculative, and dependent upon uncertainties and changing circumstances to warrant a judgment for their loss. The exception to this rule is that the loss of profits from the destruction or interruption of an established business may be recovered where it is made reasonably certain by competent proof

what the amount of the loss actually is; and such damages must be established, not by guess work, conjectures, uncertain estimates, nor mere conclusions, but by tangible facts from which actual damages may be logically and legally shown or inferred."

We have analyzed the Bokoshe case, supra, in connection with a similar argument in Johnson Oil Refining Co. of Illinois v. Elledge, 175 Okl. 496, 53 P.2d 543:

"It is further contended by defendants that evidence of loss of profits is too speculative and uncertain to afford ground for recovery, citing Bokoshe Smokeless Coal Company v. Bray, 55 Okl. 446, 155 P. 226. An examination of that case discloses that recovery was denied on account of lack of competent evidence. It is well established in this jurisdiction that the loss of profits proximately resulting from the destruction of an established business constitutes an element of damages recoverable for such destruction. Wellington v. Spencer, 37 Okl. 461, 132 P. 675, 46 L.R.A.(N.S.), 469. It has also been held that uncertainty as to the amount of damages does not prevent recovery, and, where it clearly appears that loss of profits to a business has been suffered, it is proper to let the jury determine what the loss probably was from the best evidence the nature of the case admitted. Bishop-Babcock-Becker Co. v. Estes Drug Co., 63 Okl. 117, 163 P. 276. See, also, Ft. Smith & W. R. Co. v. Williams, 30 Okl. 726, 121 P. 275, 40 L.R.A.(N.S.) 494; Wellington v. Spencer, supra; Paola Gas Co. v. Paola Glass Co., 56 Kan. 614, 622, 44 P. 621, 54 Am.St.Rep. 598; McGinnis v. Studebaker Corporation of America, 75 Or. 519, 146 P. 825, 147 P. 525, L.R.A.1916B, 868, Ann.Cas.1917B, 1190; Border City Ice & Coal Co. v. Adams, 69 Ark. 219, 62 S.W. 591; Anvil Mining Co. v. Humble et al., 153 U.S. 540, 14 S.Ct. 876, 38 L. Ed. 814."

Plaintiff refers us to Ash v. Chas. F. Noble Oil & Gas Co., 96 Okl. 211, 223 P. 175, which is more in point. Ash worked for 15 months after execution of a written employment or agency contract with defendant and proved net earnings during that period. The contract, there as here, provided for a term of five years. The trial court refused to submit the issue of loss of future profits to the jury. We held that reversible error was thereby committed. We said:

"In permitting a party to recover anticipatory profits for the breach of a contract the courts adopt the view that the profits made under the executed part of the contract, considered in connection with other evidence tending to establish that the only reason for the failure of such party to continue to gain such profits is the result of the party wrongfully breaching the contract, and that such profits would be gained in the ordinary course of things, and that where such profits may with reasonable certainty be established, are elements of damages to be submitted to jury under proper instructions. Cloe v. Rogers, supra [31 Okl. 255, 121 P. 201, 38 L.R.A.,N.S., 366]; Ft. Smith & Western Ry. Co. v. Williams, supra [30 Okl. 726, 121 P. 275, 40 L.R.A.,N.S., 494].

"In view of the above authorities we are unable to conclude, as a matter of law, where the evidence shows that the plaintiff had for 15 months performed his part of the contract, and as a result thereof acquired profits in the amount of approximately $7,000 per month * * *, that it may be held that he would not have continued to make such profits in the ordinary course of things. * * *"

Actions for breach of contract where we have approved judgments for loss of future or anticipated profits (which were proved with evidence sufficient to permit a

reasonably accurate measurement) are Megert v. Bauman, 206 Okl. 651, 246 P.2d 355 and Morgan v. Underwood, Okl., 292 P.2d 1001.

■ Even though we hold that it was proper to allow plaintiff damages for future loss of profits, we also hold that the trial court erred in failing to base the amount of the judgment on its present value at the time judgment was entered. Gallaspy v. Warner, Okl., 324 P.2d 848.

■ Defendant directs our attention to 23 O.S.1951 § 96, which provides that no person can recover a greater amount in damages for the breach of an obligation than he could have gained by full performance thereof on both sides, except in cases where recovery may be for exemplary and penal damages.

The trial judge made statements at the time judgment was rendered on March 25, 1960, showing the basis for the amount of the judgment. He took defendant's evidence of plaintiff's net profit of $23,347.33 for the one year operation under the contract and multiplied it by four (the number of years remaining under the terms of the contract at the time of the breach) to arrive at future profits of $93,389.32. Evidence showed that six months after the breach of contract plaintiff sold the equipment covered by the contract with defendant and secured other employment from which he earned an average of $2,400 per year up to the time of trial. The trial court therefore multiplied $2,400 by three and one-half (the number of years of other gainful employment by plaintiff during the term of the contract with defendant) to arrive at the figure of $8,400. By deducting $8,400 from $93,389.32, the trial court arrived at a judgment of $84,989.32. To allow such judgment to stand would be to allow plaintiff the use of money in advance of the time he was entitled to receive it under the contract and he would gain more than he otherwise would by full performance of the contract.

■ The sum should have been reduced to its present value at the time judgment was entered. Since no evidence was presented concerning the rate of interest to be used in computing the present value of future and past benefits, we hold that 6% per annum should have been used by the trial court. Gallaspy v. Warner, supra, and see Annotations at 90 A.L.R. 1318 and 105 A.L.R. 234.

For this purpose we will use the same methods of calculation as used in the Gallaspy case, supra. Judgment was entered by the trial court one year and nine months after the breach of contract occurred. Had the contract been fully performed, at the end of the first year following the breach plaintiff would have received $23,347.33 (less the $1,200 he actually received from other employment). This amount which plaintiff was entitled to receive in the past but has not received must be adjusted to its present value by the allowance thereon at the same rate as that used in determining the present worth of future benefits not yet due. We find that interest at the rate of 6% per annum on the $22,147.33 already accrued at the date of judgment, for the nine months loss of its use, amounts to the sum of $996.63, which sum should be added to the amount of plaintiff's award.

At the time of judgment plaintiff was also entitled to receive a sum representing profits for the nine months immediately preceding judgment (for which no allowance for present value need be made as it is received when due). Thus it is seen that at judgment time plaintiff's accrued income due under the lease contract was $23,347.33 less $1,200 for the first year following breach and $17,510.50 less $1,800 for the next nine months or a total of $37,857.83. This amount deducted from the total amount of $84,989.32 due plaintiff would leave $47,131.49 payable as follows:

1. $5,836.83 less $600 or $5,236.83 due July 1, 1960.

2. $23,347.33 less $2,400 or $20,947.33 due July 1, 1961.

3. $23,347.33 less $2,400 or $20,947.33 due July 1, 1962.

The interest on the first payment at the rate of 6% per annum from date of judgment to the time due on July 1, 1960, would be $78.55. The interest on the second payment from judgment to due date would be $1,571.05. The interest on the third payment from judgment to due date would be $2,827.89. We find the total interest on the future payments to be $4,477.49, and the amount of plaintiff's award should be reduced or discounted by that amount.

The correct amount for which judgment should have been awarded plaintiff for loss of profits and without taking other things into consideration is therefore $84,989.32, plus $996.63 (interest on past due profits not yet received), less $4,477.49 (interest on future profits not yet due), or the sum of $81,508.46.

However, before we can state that the last mentioned figure is the amount of the judgment which should have been entered by the trial court, there is one other item of damages or lack thereof to be considered in viewing the matter from the standpoint of damages to plaintiff. This is the fact that plaintiff sold all of his equipment six months after the breach by defendant. Therefore for the three and one-half years remaining on the term of the contract, plaintiff did not and will not have his money invested in such equipment. The evidence of the parties indicated the value of such equipment to be a minimum of $50,000. Using the same rate of 6% per annum interest on such sum for three and one-half years, we find that plaintiff's damages should also be reduced by the sum of $10,500 for this item.

Except for the last item mentioned above the record shows definitely and clearly the amount for which judgment should have been rendered, and under the rule set out in Gallaspy v. Warner, supra, we would be empowered to modify the judgment accordingly. Since, however, there was some dispute on the value of plaintiff's equipment, we believe the proper method of disposition of this case is to affirm subject to a remittitur by plaintiff. Cf. Cities Service Gas Co. v. Christian, Okl., 340 P.2d 929.

The judgment of the trial court is affirmed subject to plaintiff's remitting excessive damages in the amount of $13,980.86, thus reducing the judgment to $71,008.46. In the event plaintiff elects not to remit said amount within twenty (20) days after the court's mandate herein is handed down, then the case is reversed and the trial court is directed to grant defendant a new trial on plaintiff's first cause of action.

BLACKBIRD, V. C. J., and DAVISON, JOHNSON and JACKSON, JJ., concur.

WILLIAMS, C. J., and IRWIN, J., concur in part; dissent in part.

WELCH and BERRY, JJ., dissent.