PARSIA v. JOHN E. BARBRE TRUST



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:PARSIA v. JOHN E. BARBRE TRUST

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 PARSIA v. JOHN E. BARBRE TRUST
2021 OK CIV APP 36
Case Number: 118910
Decided: 08/30/2021
Mandate Issued: 09/30/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 36, __ P.3d __

 

PARSIA, INC., and MORAD SEPAHVAND, Plaintiffs/Appellants,
v.
THE JOHN E. BARBRE TRUST, A/K/A THE JOHN E. BARBRE TRUST NO. ONE, AND ROBERT L. BARBRE, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DAMAN CANTRELL, TRIAL JUDGE

AFFIRMED IN PART AND REVERSED IN PART

James O. Goodwin, GOODWIN & GOODWIN, Tulsa, Oklahoma, for Plaintiffs/Appellants,

Robert J. Carlson, Barbara M. Moschovidis, GABLEGOTWALS, Tulsa, Oklahoma, for Defendants/Appellees.

THOMAS E. PRINCE, JUDGE:

¶1 This case involves an alleged breach of an Assumption of Lease Agreement stemming from a judicial ruling in a prior condemnation action. Plaintiff/Appellant, Morad Sepahvand, appeals the trial court's grant of summary judgment in favor of Defendants/Appellees, the John E. Barbre Trust, a/k/a the John E. Barbre Trust No. One, and Robert L. Barbre ("Trust").[1] In the prior condemnation action, the City of Tulsa secured a final order of condemnation concerning the property at issue here, during which the court there found that a non-party to this case held a leasehold interest that was superior to the interest claimed by Morad and awarded the non-party the sum of $330,000.00 for the value of improvements to the property. Morad then filed a fraud claim against the Trust, but ran afoul of the two year statute of limitations. He later filed an Amended Petition to assert claims for breach of contract, promissory estoppel and breach of warranties. The trial court here granted summary judgment to the Trust and found that Morad's claims "sound in fraud, not contract, and in any event, plaintiff cannot show anything more than speculative damages, which is prohibited." The determinative issues here are: whether disputed material facts exist that preclude summary judgment on the validity of the Assumption of Lease Agreement at issue here and on the additional issues of breach and damages; and, also whether, as a matter of law, Morad is able to assert a claim for promissory estoppel. Based on our answers to these issues, we affirm, in part, reverse, in part, and remand the matter for further proceedings consistent with this Opinion.

BACKGROUND

¶2 The facts of this case involve a series of commercial leases and ownership changes. Initially, a Lease Agreement was executed by Consumers, Inc., the owner of the subject property located in Tulsa, with Cities Services Company (dated January 9, 1981).[2] Central to the facts of this case is that the 1981 Lease Agreement included a right of first refusal.[3]

¶3 After approximately seven years, the Lease Agreement was assumed by non-party B&M Oil Company. On October 15, 1998, CITGO, the successor in interest to Cities Services Company, entered into an Assignment and Assumption Agreement that allowed B&M Oil Company to assume all of the rights and obligations under the 1981 Lease Agreement. On the same day, B&M Oil Company entered into an oral lease agreement with Morad to operate a CITGO gas station and convenience store located on the subject property.

¶4 Approximately three years later, on or about July 11, 2001, Morad and the Trust entered into a formal Assumption of Lease Agreement in which the Trust explicitly agreed that Morad would assume all of the rights and obligations set forth in the 1981 Lease Agreement. Paragraph one of the Assumption of Lease provided, in part, that "Lessor [i.e., the Trust] agrees that Assignee [i.e., Morad] shall assume all right, title and interest in and the [1981] Lease Agreement." On the other hand, no language or condition of any kind was included in the document to address the existing right of B&M to continue as the lessee. When asked in his deposition to explain this conflict, the Trustee of the Trust testified that he was aware that "B&M had the right to continue on . . . [, that he] should have put that in . . . [the Assumption of Lease Agreement] . . . [, and that the failure to do so] was a mistake . . . ." Rd. 4, Ex. 8 at 54, 59-60.

¶5 Following the expiration of another approximate three year period, on or about December 6, 2004, the City of Tulsa filed a condemnation action which included the subject property toward the goal of building the BOK Center. Morad, B&M Oil Company and the Trust were joined as defendants in the condemnation action. One of the disputed issues in the condemnation action was whether Morad or B&M Oil would receive funds from the Commissioner's Award attributable to the value of improvements to the subject property. The court in the condemnation action found that the 1998 Assignment and Assumption Agreement was a "top lease" that was designed to ensure that a tenant remained in place on the subject property in the event B&M Oil chose not to renew. The court in the condemnation action further found that "B&M Oil is the sole lessee of the Property . . ." and awarded $330,000.00 to B&M Oil for the value of improvements.[4] The court there also narrowly determined that the 2001 Assumption of Lease was "legally invalid as to B&M . . . because the original Lease Agreement . . . granted the lessee (B&M) the right of first refusal . . ., and B&M was not granted such an opportunity prior to the execution of the purported Assumption of Lease dated July 11, 2001". (emphasis added). Trust Ex. 5. No finding was made in the condemnation action with respect to whether the 2001 Assumption of Lease Agreement was valid as between the Parties to this case. The Judgment in the condemnation action was entered on September 12, 2005. Id.

¶6 Two years and five days following the entry of the judgment in the condemnation action, on September 17, 2007, Morad initiated an action against the Trust. At that time, Morad only alleged a fraud claim, based on the allegation that the Trustee did not inform him of B&M Oil's superior right to lease the subject property when he signed the Assumption of Lease on July 11, 2001. Morad later amended his claims, to include claims for breach of contract, breach of warranties and promissory estoppel. He did not re-assert a claim for fraud.

¶7 The Parties litigated Morad's claim from September 17, 2007, until October 24, 2014, when Morad filed a Dismissal Without Prejudice. Thereafter, on October 16, 2015, Morad refiled his claim against the Trust, again asserting claims for breach of contract, breach of warranties and promissory estoppel.

¶8 The Trust filed Defendants' Motion for Summary Judgment and Supporting Brief on August 9, 2019, in part, arguing that Morad had no damages:

In response to Defendants' interrogatory requesting that Sepahvand identify the factual basis for his allegation that he was entitled to receive compensation for 'the improvements made to the subject property,' Sepahvand stated, 'this matter is moot, as Plaintiffs' damages will not include an amount for improvements made to the subject property.'

The Trust further alleged that in response to a request for Morad to produce all documents that support his claim for damages, they received Morad's tax returns for 2001-2004. The returns indicated that the income attributable to operation of the gas station was in a sharp decline.[5] The Trust argued that there could be no damages to Morad as a result of the condemnation action and that damages for lost profits were too speculative to warrant a judgment for any loss.

¶9 Morad responded to the Trust's Motion for Summary Judgment, claiming that the amount awarded in the condemnation action for the value of the leasehold interest (which was $0.00) is irrelevant to this proceeding because he asserted claims for breach of contract, breach of warranty and promissory estoppel. Morad claimed that, had he been told the truth, he never would have signed the Assumption of Lease during 2001 and he would have abandoned the subject property. Morad also argued that the question as to whether profits can be ascertained with reasonable certainty is an issue of fact which is decided by the trier of fact.

¶10 The trial court granted summary judgment to the Trust on June 12, 2020. Morad filed his Petition in Error on July 13, 2020, in which he raised the following issues: (1) whether a contract existed between Morad and the Trust as a result of the written Assumption of Lease agreement with Morad, (2) whether the Trust breached the Assumption of Lease agreement and its warranties by failing to meet the obligations the Trust imposed on itself by entering into an Assumption of Lease agreement with Morad, (3) whether Morad was entitled to damages as a direct result of the alleged breach of contract and its warranties; and (4) whether promissory estoppel existed as a result of the alleged breach of contract and its warranties.

STANDARD OF REVIEW

¶11 A trial court's grant of summary judgment is reviewed de novo. Wood v. Mercedes-Benz of Oklahoma City, 2014 OK 68, ¶ 4, 336 P.3d 457, 459 (citation omitted). Under this standard, appellate courts are "afforded 'plenary, independent, and non-deferential, authority to examine the issues presented.'" Id. (citation omitted). Examination of a grant of summary judgment requires appellate courts to determine whether the record actually presented reveals disputed material facts. Id.; see also Okla. D. Ct. R. 13(a) (explaining that "[a] party may move for [] summary judgment . . . on the merits on the ground that the evidentiary material filed with the motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact"). In order to determine whether there is a disputed material fact, appellate courts examine--"in a light most favorable to the nonmoving party," Tiger v. Verdigris Valley Electric Cooperative, 2016 OK 74, ¶ 13, 410 P.3d 1007, 1011 (citation omitted)--"the pleadings, affidavits, depositions, admissions, or other evidentiary materials" supporting the motion for summary judgment. Evers v. FSE Overtake Association, 2003 OK 53, ¶ 9, 77 P.3d 581, 584 (citation omitted). Summary judgment is appropriate when the pleadings and evidentiary material establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Lewis v. Dust Bowl Tulsa, LLC, 2016 OK CIV APP 43, ¶9, 377 P.3d 166, 170.

ANALYSIS

The 2001 Assumption of Lease Agreement and the Alleged Breach Thereof

¶12 There is no dispute of fact concerning the execution and terms of Assumption of Lease Agreement. Rd. 3 at 3 (Undisputed Fact No. 7). The Trust's defense with respect to Morad's claim for breach of the 2001 Assumption of Lease Agreement is that Moard "cannot prevail . . . because he cannot prove damages . . . [and] his sworn testimony proves no requisite meeting of minds and no contract was formed." Rd. 6 at 3. To show an absence of a meeting of the minds, the Trust argues that the purpose of the Assumption of Lease Agreement was to allow Morad to become the sole lessee in the event that B&M Oil chose not to renew its lease. Rd. 3 at 3 (Undisputed Fact No. 7). The Trust further argues that the alleged statements and/or assurances made by the Trust's representatives contemporaneous with the execution of the Assumption of Lease Agreement (and subsequent thereto), together with the alleged failure to disclose the existence of the "top lease", are inadmissible under the parol evidence rule and/or, at best, are relevant only to a potential fraud claim (which is barred by the statute of limitations). We find that whether there was a meeting of minds with respect to the formation of an enforceable contract between the Trust and Morad is a disputed issue of fact that precludes the entry of summary judgment for the Trust. The law is clear that, in order to have a valid contract, there must be mutual consent -- i.e., a meeting of the minds. Hampton v. Sur. Dev. Corp., 1991 OK 94, 817 P.2d 1273, 1274--1275. When there is a mutual mistake of fact as to a material element of the contract, a meeting of the minds is absent. Id. When a contract is executed under a mutual mistake of fact, a court can rescind the contract and restore the parties to the same positions as when the contract was executed. Id. See 15 O.S. §§2 & 51 (setting out the requisite elements for the formation of a contract); OUJI 23.2 &23.35; Tiger v. Verdigris Valley Electric Cooperative, supra. (where the Court noted that, in order to determine whether there is a disputed material fact, appellate courts examine--"in a light most favorable to the nonmoving party"; Landsing Properties v. OKC Apartments, Ltd., 496 F. Supp. 5, 7 (W.D. Okla. 1979) (where the Court found disputed issues of fact and denied a motion for partial summary judgment on the issue of "whether the document in question constitutes a binding and enforceable contract.");

¶13 On the issue of breach, the plain language of ¶1 of the Assumption of Lease Agreement provided that Morad was to assume all right, title and interest in and the 1981 Lease Agreement. In contrast, it is undisputed that (based on the deposition testimony of the Trustee and the findings by the court in the condemnation action) B&M Oil was the sole lessee of the property. To defend this apparent conflict, the Trust appears to argue that, in the absence of a valid contract, there can be no claim for a breach of contract. See Franco v. State ex rel. BD. of Regents of University of Oklahoma, 2020 OK CIV APP 64, ¶68, 482 P.3d 1, 16. Therefore, the issue of breach of the Assumption of Lease Agreement is inextricably intertwined with the issue of enforceability of the agreement. Consequently, both issues (i.e., the issues of enforceability and breach) are disputed facts, the resolution of which must be resolved by the trier of fact at trial.

Damages

¶14 Concerning the issue of damages, Morad argued in response to the Motion for Summary Judgment, in part, that "[h]ad the Defendant been truthful, the Plaintiff would never have found himself in that predicament nor incurred loss of economic opportunity." Rd. 4 at 9. On the other hand, Morad specifically stated in response to one of Appellees' interrogatories that he was not claiming any damages based on any improvements to the subject property. It is unclear from the record what damages Morad is seeking under his breach of contract/warranties theory, such as prospective damages, in the form of anticipated lost profits and/or nominal damages.[6] The Trust argues that any losses experienced by Morad were related to the condemnation of the property by Tulsa, not the actions of the Trust and that Morad was allowed to have possession of the premises at all times until the property was condemned. The central thrust of the Trust's argument regarding damages is the speculative nature of Morad's evidence.

¶15 The issue of damages is highly contested. Minimally, in the event Morad is unable at trial to demonstrate actual damages, a jury should be permitted to consider an award of nominal damages. The law is well-settled that "a breach of contract is a legal wrong independent of the existence of actual damages." Morgan v. State Farm Mut. Auto. Ins. Co., 2021 OK 27, ¶ 24, 488 P.3d 743, 750 ("The third element of a breach of contract action is damages. But, unlike a tort claim, a breach of contract is a legal wrong independent of the existence of actual damages. (citations omitted). . . . A plaintiff can maintain a breach of contract action to a successful conclusion without proof of actual damages, because nominal damages are all that is required."); See 23 O.S. §98 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). Therefore, as with the issues of enforceability and breach, it was improper for the trial court to grant summary judgment in favor of the Trust on the issue of damages.

Promissory Estoppel

¶16 The crux of Morad's promissory estoppel claim is that he was misled or duped into signing the 2001 Assumption of Lease as a result of Appellees' false representations. Morad's request for relief under the theory of promissory estoppel was also based on his claim that he specifically relied on the various provisions in the 1981 Lease Agreement that addressed rights of a lessee when the subject property was condemned, and specifically allowed the lessee to have the value of buildings and the improvements to the property that had been made by the Lessee.[7]

¶17 The fatal flaw with Morad's promissory estoppel claim is that, because there was a written agreement between Morad and the Trust, Morad may not claim any rights under a promissory estoppel theory that he did not possess under the 2001 Assumption of Lease. In Bickerstaff v. Gregston, 1979 OK CIV APP 64, 604 P.2d 382, the Court of Civil Appeals addressed a case involving a written agreement for the purchase of an easement. Id. at 383. A disagreement arose regarding certain "post agreement" conduct of the parties and a claim for promissory estoppel was asserted by the aggrieved party. Id. In rejecting the promissory estoppel claim, the Court held as follows:

Where a contract is created by agreement of the parties the parties are held to their mutual promises or undertaking (or the unilateral promise where the exchange is that of a promise for an act). Promissory estoppel is a doctrine (originally of an equitable nature but now a part of the common law) whereby a person who reasonably relies to his detriment on another's promise is given by law the benefit of a contract wherein an agreement did not come to fruition. Cf. Restatement of Contracts (Second), T.D. 1-77, s 90[1]. Thus where an agreement has been reached detrimental reliance on the contract can create no greater rights that one possesses under the contract. Greater reliance is considered at law unreasonable.

Id. at 384 (emphasis added).

¶18 Although promissory estoppel, which is grounded in the Restatement (Second) of Contracts §90, is part of the Oklahoma common law, Russell v. Board of County Commissioners, 1997 OK 80, ¶27, 952 P.2d 492, 503, there is no authority in Oklahoma that would grant a litigant (under a promissory estoppel claim) greater rights than those agreed to by the parties in their written agreement. Lacy v. Wozencraft, 1940 OK 383, ¶9, 105 P.2d 781, 783 (where the court analyzed an alleged oral agreement and outlined the essential elements of a claim of promissory estoppel). Consequently, as a matter of law, summary judgment in favor of the Trust was proper on the promissory estoppel claim.

¶19 In its ruling below, the trial court held, in part, that Morad's claims "sound in fraud, not contract . . .". Based on our holding herein on the breach of contract/warranties claim, we disagree. We recognize, however, that an unresolved issue on remand will be the admissibility of some of Morad's evidence that ostensibly was placed in the record solely to support the time-barred fraud claim. Id. See First Nat. Bank in Durant v. Honey Creek Ent. Corp., 2002 OK 11, ¶ 12, 54 P.3d 100, 104 ("It is well-established in Oklahoma that the parol evidence rule does not preclude evidence of false and fraudulent representations of fact offered to establish fraud in the inducement of the execution of a contract, even when those representations directly contradict the contract provisions); Davon Drilling Co. v. Ginder, 1970 OK 51, 467 P.2d 470, 472 (where the Court generally discussed application of the parol evidence rule). These are evidentiary issues unresolved by this Opinion that the trial court will be required to address on remand.

CONCLUSION

¶20 We reverse the trial court's grant of summary judgment on the breach of contract claim and affirm the grant of summary judgment on the promissory estoppel claim. The Order on Motion for Summary Judgment is, therefore, affirmed in part, and reversed, in part, and the matter is remanded to the trial court for further proceedings consistent with the Opinion.

GOREE, P.J., and MITCHELL, J., concur.

FOOTNOTES

[1] During the pendency of this action the trial court dismissed Parsia, Inc. as a Plaintiff due to lack of standing.

[2] The Trust is the successor in interest to the original owner, Consumers, Inc.

[3] Paragraph 15 of the Lease Agreement states: "Right of Refusal: In the event of any offer acceptable to LESSOR, or to LESSOR'S successor in interest, at any time or time during the primary or any extended term hereof, for the sale of the demised premises or for a lease to commence upon the expiration or earlier termination of the primary or any extended term hereof, the LESSOR, prior to acceptance thereof, shall give the LESSEE, with respect to each such offer, written notice thereof, and a copy of said offer, including the name and address of the proposed purchaser or lessee, and LESSEE shall have the option and first refusal for sixty (60) days after receipt of such notice within which to elect to purchase or lease the premises, as the case may be, on the terms of said offer. If LESSEE shall elect to purchase or lease the premises pursuant to the option and first refusal herein granted, it shall give written notice of such election within such sixty (60) days period. LESSEE's failure at any time to exercise its option under this paragraph shall not affect this lease and the continuance of LESSEE's rights and options under this and any other paragraph of this lease.

[4] The Report of Commissioners filed on January 31, 2005, in the District Court of Tulsa County Case Number CJ-2004-07528, stated, in part, that: "We hereby assess the damages for the taking of the property as follows: Land: $350,000.00. Improvements: $330,000.00. Leasehold: $0. Total Just Compensation: $680,000.00." On September 12, 2005, the court in Tulsa County Case Number CJ-2004-07528, issued Findings of Fact and Conclusions of Law which included the following finding: "18. Pursuant to the original lease agreement that B&M assumed on October 15, 1998, B&M was entitled to the sole right of first refusal of the offer to extend the lease for two additional five year terms. B&M was not offered the opportunity to exercise its right of first refusal prior to the execution of the Assumption of Lease to Morad Sepahvand, nor did B&M ever waive its right of first refusal." The district court concluded that B&M was the sole lessee of the property pursuant to the agreement dated October 15, 1998.

[5] The income from operation of the gas station was $65,152 in 2001, $15,697 in 2002, $14,511 in 2003, and $4,354 in 2004.

[6] There are a limited number of appellate cases that construe Oklahoma law on the issue of whether a business may recover lost future profits under a breach of contract theory. See See Florafax International, Inc. v. GTE Market Resources, Inc., 1997 OK 7, ¶42, 933 P.2d 282 ("In order for damages to be recoverable for breach of contract they must be clearly ascertainable, in both their nature and origin, and it must be made to appear they are the natural and proximate consequence of the breach and not speculative and contingent); Groendyke Transportation Inc. v. Merchant, 1962 OK 32, 380 P.2d 682, 685--86 (where the Court held that, in actions for breach of contract where a claim was made for loss of future or anticipated profits, it has been required that the evidence be sufficient to permit a reasonably accurate measurement).

[7] There is no assertion by Morad that the 2001 Assumption Lease did not cover the entirety of the agreement between the Parties.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2016 OK CIV APP 43, 377 P.3d 166, LEWIS v. DUST BOWL TULSA, LLC
Discussed
 1979 OK CIV APP 64, 604 P.2d 382, BICKERSTAFF v. GREGSTON
Discussed
 2020 OK CIV APP 64, 482 P.3d 1, FRANCO v. STATE ex rel. BD. OF REGENTS OF UNIVERSITY OF OKLA.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1940 OK 383, 105 P.2d 781, 188 Okla. 19, LACY v. WOZENCRAFT
Discussed
 1991 OK 94, 817 P.2d 1273, 62 OBJ 2894, Hampton v. Surety Development Corp.
Discussed
 1997 OK 7, 933 P.2d 282, 68 OBJ 306, Florafax International, Inc. v. GTE Market Resources, Inc.
Discussed
 1997 OK 80, 952 P.2d 492, 68 OBJ 2217, RUSSELL v. BOARD OF COUNTY COMMISSIONERS
Discussed
 1962 OK 32, 380 P.2d 682, GROENDYKE TRANSPORT, INC. v. MERCHANT
Discussed
 2002 OK 11, 54 P.3d 100, 73 OBJ 560, FIRST NATIONAL BANK IN DURANT v. HONEY CREEK ENTERTAINMENT CORP.
Discussed
 1970 OK 51, 467 P.2d 470, DAVON DRILLING COMPANY v. GINDER
Discussed
 2003 OK 53, 77 P.3d 581, EVERS v. FSF OVERLAKE ASSOCIATES
Discussed
 2014 OK 68, 336 P.3d 457, WOOD v. MERCEDES-BENZ OF OKLAHOMA CITY
Discussed
 2016 OK 74, 410 P.3d 1007, TIGER v. VERDIGRIS VALLEY ELECTRIC COOPERATIVE
Discussed
 2021 OK 27, 488 P.3d 743, MORGAN v. STATE FARM MUTUAL AUTOMOBILE INSUR. CO.
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 2, Essential Elements of Contract
Cited
Title 23. Damages
 Cite
Name
Level

 23 O.S. 98, Right to Nominal Damages
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA