Joseph Paul LUCAS, Plaintiff in Error,

v.

Orville K. HOCKETT, Defendant in Error.

Joseph Paul LUCAS, Plaintiff in Error,

v.

Helen HOCKETT, Defendant in Error.

No. 42544.

Supreme Court of Oklahoma.

April 28, 1970.

Calvin W. Hendrickson, Oklahoma City, Pierce, Duncan, Couch & Hendrickson, Oklahoma City, of counsel, for plaintiff in error.

Shutler, Shutler, Baker & Simpson, Kingfisher, for defendants in error.

DAVISON, Justice.

Joseph Paul Lucas (defendant below) appeals from a judgment granting Orville K. Hockett and Helen Hockett (plaintiffs below) a new trial.

The general proposition presented by this appeal is whether under all of the circumstances and after unanimous verdicts for the defendant, the trial court was justified in granting a new trial to plaintiffs on the ground of newly-discovered evidence. The particular issues are whether the alleged newly-discovered evidence was evidence the plaintiffs could not, with reasonable diligence, have discovered and produced at the trial, and whether such evidence was merely cumulative or to impeach the former evidence at the trial.

Plaintiffs filed separate actions against defendant to recover for personal injuries allegedly received about 8:40 P.M. on May 6, 1965, at a point about one-half mile north of Hennessey, Oklahoma, on U.S. Highway 81, when the pickup truck the plaintiff (Mr. Hockett) was driving in a southerly direction and in which plaintiff (Mrs. Hockett) was a passenger, ran into the left rear corner of defendant's automobile. Plaintiffs alleged the defendant backed his automobile from a private driveway on to the Highway and stopped facing in a southeast direction, and the two vehicles collided. Plaintiffs charged defendant with negligence in failing to keep a proper lookout, improper backing, and improper stopping on the roadway.

Defendant answered, pleading unavoidable accident, sudden emergency, and contributory negligence. Defendant filed a cross-petition in plaintiff Mr. Hockett's action, in which he sought recovery for his personal injuries, charging plaintiff with excessive speed, failure to stop, and failure to avoid the collision.

As stated, the accident occurred on May 6, 1965. The two suits were filed April 26, 1966, and trial was had on November 22, 1966. Both actions were consolidated and tried together. The jury returned unanimous verdicts, that defendant was not liable to either plaintiff.

There is no conflict in the testimony that the collision took place about one-half mile north of Hennessey, Oklahoma, on Highway 81, at a point where the Highway runs north and south, with an open view of about one-half mile in both directions; that on the east side of the Highway is a residence occupied by a Mr. Matusick which is served by a private circular driveway that enters the Matusick property almost directly east of the collision site, and then curves north in front of the residence, and thence in a curve back west, where it connects with the Highway; and that defendant, after discussing some business with Matusick and intending to return to the Highway and proceed south toward Hennessey, backed his car out of the south leg of the circular driveway and into the paved Highway, where the engine stopped. Defendant tried several times to start the engine and it, at least, partially started and then stopped again. There is a dispute as to whether the defendant's car backed only into the west traffic lane (defendant's version), or into and across it on to the west roadway shoulder and thence forward into the west lane (plaintiff's version), where the car was pointed in a southeasterly direction. There is no dispute that plaintiff (Mr. Hockett) was driving his pickup south, and that the right front area of his vehicle struck the left rear corner of defendant's car.

Our further narration of the circumstances will be mainly directed at the testimony that is related to the issue of "newly-discovered evidence." Plaintiff Mr. Hockett testified he was driving south and had dimmed his lights for a car coming from the south, which was about a mile away, when defendant's car with no lights on "pulled out in front of us when we were

about eighty foot from" the car; that he applied his brakes and when within about forty feet of defendant's car, "I saw his tail light, left tail light"; and that defendant's car was moving forward in a southeasterly direction. This plaintiff further testified that the first person he talked to right after the accident was a Mr. Al Neely, and also stated a number of times in his testimony that Neely told him that he (Neely) was following plaintiff's truck, just before the collision, and that Neely took Mrs. Hockett to a nephew's house in Hennessey.

The plaintiff Mrs. Hockett testified that after her husband applied the brakes she saw a red light, on the left rear of defendant's car, and that Mr. Neely took her into Hennessey.

Plaintiffs used the investigating Highway Patrol Trooper as a witness. He arrived at the scene about 35 minutes after the accident. He testified, among other things, that the defendant's car was headed more south than east at the time of impact; that the two left rear tail lights were knocked out, but the two right rear tail lights were working; and that there was no shoulder west of the slab, where the terrain sloped down 5 or 6 feet, and he found no tire marks there.

The defendant and his business associate passenger testified collectively that defendant backed his car to the Highway and that there were automobile lights at a great distance to both the north and south; that the car was backed into the west lane of traffic where the engine stopped with the vehicle pointed in a southeasterly direction; and that the car lights were on at all times, until plaintiff's truck hit the defendant's car.

Defendant introduced in evidence the deposition of Alvin (Al) Neely, who was an employee of a concern engaged in oil field activities. (Plaintiff had testified Neely told him at the scene of the accident that he—Neely—was following plaintiffs' pickup truck). Neely testified that on the date of the accident he lived in Enid,

Oklahoma, (north of Hennessey) and that he witnessed the collision between the two vehicles. Neely stated that before the accident he entered Highway 81 *south* of the accident site and drove his car *north* following a pickup truck; that about one-half mile from the site of the wreck he started to pass the truck on the left and saw lights "setting at an odd angle on the pavement" and "thought there must be something wrong, or a car stalled in the other lane of traffic;" that he pulled back into his lane of traffic and as he got closer he saw the car sitting at an angle; that the car's headlights were on at all times he observed the car; and that he saw a pickup truck (plaintiffs') approaching at a constant speed from the north. Neely further stated that the pickup truck in front of him "cleared the cars" and he pulled to the right to avoid the wreck and made a U-turn in a lawn (Metusik's) and came back to the pavement, facing west; that he had a 2-way radio in the car and notified his base station to send an ambulance; that he walked over to the wreck to see if he could help, and took the woman in his car to her relative's house in Hennessey (south), and then returned to the wreck "because it was on the way to where I lived in Enid", and left his business card with some people that were with the man in the pickup truck. Neely said he did not know any of the parties; that he talked to the Hennessey City Police; that the pickup in front of him had passed before the collision and he thought it continued on north; and that the vehicles collided as he was opposite them.

On December 2, 1966 (10 days after the trial), a motion for new trial was filed on the ground of newly discovered evidence consisting of testimony of a newly discovered witness named Hoyt R. McEachern. Attached to the motion for new trial was an affidavit by the plaintiff Mr. Hockett stating that he first learned of the witness McEachern on November 26, 1966, by coincidence, by entering the place of business of the witness, seventeen miles west of Hennessey, and could prove by him that the defendant could have been on the Highway only a few seconds, that defendant's car did not have its lights on, and that Al Neely was not traveling from the south going north and could not have seen the lights on the car of the defendant. Also attached to the motion for new trial was the affidavit of McEachern stating that on the night of the wreck he was driving south alone on Highway 81, following Neely, who was driving a company car; that Neely was following a pickup he later learned was driven by Mr. Hockett; that a car was coming from the south, when Neely slowed abruptly and turned left and into a north driveway and across a front yard and stopped in the south driveway facing west; that he (McEachern) drove into the north driveway and stopped and sat there for four or five minutes, and saw Neely converse with plaintiff Mr. Hockett; and that he (McEachern) backed out of the driveway and drove north to a section line and thence west to his home west of Hennessey. McEachern swore he told no one he had witnessed the accident until Mr. Hockett informed him that he (Mr. Hockett) had lost the lawsuit, and he then revealed his knowledge of the accident.

On December 15, 1966, an Amendment to Motion for New Trial was filed reciting that an additional witness had been discovered on December 11, 1966, who would testify to facts set forth in an attached affidavit. The affidavit was that of one Paul Hoover, who swore that in the course of his employment he had occasion to check the butane tank at the Hockett residence on December 11, 1966, at which time he informed Mr. Hockett that he was present near the accident scene at the time of its occurrence; that he was traveling north alone on Highway 81, with his lights on dim because of lights of a vehicle coming from the north, and observed an object in the highway approximately on the west half of the pavement at a distance of about 100 feet, without any lights, and when within a few feet of

the object the headlights came on; that he turned to the right, heard the impact, and traveled on the shoulder of the highway for a short distance, and proceeded to the next section line, where he turned and came back to the accident, and called Irl Landaker to send a wrecker. Hoover swore that no vehicle was following behind him "that I could see"; that there were two vehicles following the vehicle that collided with the automobile in the road; and that he did not inform anyone he was at the accident until he had occasion to see Mr. Hockett.

The defendant took the depositions of McEachern and of one Irl Landaker and these were introduced at the hearing on the motion for new trial.

McEachern's deposition is to some extent in accord with his earlier affidavit, that shortly before the accident he was driving south following Neely, who was following the pickup driven by plaintiff Mr. Hockett; that Neely slowed abruptly and turned left across the Metusik lawn and stopped facing west toward the highway; and that he (McEachern) turned left into the north drive and remained in it for about 5 minutes without disclosing his presence. He said Neely talked to Mr. Hockett, and that Hockett "started to flag the traffic there". McEachern also stated that he operated a filling station west of Hennessey where he sold gasoline and oil and groceries; that he had known Mr. Hockett for about 20 years, during which time Hockett had traded with him off and on; that since the accident, in September, 1966, the Hocketts had moved to a location west of him, where they lived in a trailer house; and that Mr. Hockett traded with him about twice every 10 days, and Hockett had talked about the accident, but he (McEachern) had not told anyone of his presence at the accident. McEachern also testified that he knew Neely and had worked for Neely's employer and under Neely, before and after the accident, and had heard Neely comment on the accident. McEachern further stated that he did not see the defendant's car at all before the accident, because he could

not see through the two vehicles traveling in front of him; that he had no idea whether the defendant's car was moving or stopped or "anything else"; that he had no idea whether, or not, the lights on defendant's car were on before the accident; and that he did not see any more than what the trooper could have seen, when the trooper later arrived at the scene of the accident.

In his deposition Irl Landaker stated he was the father-in-law of Paul Hoover, the other newly discovered witness. Landaker testified he operated a wrecker service, and a trailer court in which the Hocketts and Paul Hoover lived at the time of the accident, right across the court from each other and "they visited back and forth"; that Hoover called and told him that Hockett had been involved in this accident and Hockett wanted him (Landaker) to come and get Hockett's pickup truck; that when he arrived at the accident site he found his son-in-law Hoover, Mr. Hockett, the Hennessey Police, and the State Highway Patrol; and that Hoover was "sort of watching out after" Hockett, and Hoover later said he took Hockett to the hospital. Landaker further stated that he towed the pickup back to his yard where it was declared a total loss; that he talked to Mr. Hockett about the wreck about two weeks later; that Mr. Hockett stated he was going to file suit, and he knew the suit was filed, but he was not asked to be a witness; and that Hoover said Mr. Hockett asked Hoover to be a witness at the trial, but he did not know whether Hoover testified.

The trial court concluded there was sufficient grounds to grant a new trial because of newly-discovered evidence.

At the outset we are presented with the proposition of the discretion vested in the trial court to grant or refuse a new trial where the ground urged therefor is newly-discovered evidence.

■ In Vickers v. Phillip Carey Co., 49 Okl. 231, 151 P. 1023, L.R.A.1916C, 1155, we held in a situation involving "newly-discovered" evidence that the phrase "dis-

cretion of court," as applied to granting and denying new trials, means a legal discretion, to be exercised in discerning the course prescribed by law according to principles ascertained by adjudged cases. In the cited case we reversed the action of the trial court in granting a new trial, because it disregarded the rules of law controlling discretion in such cases.

See also States Exploration Company v. Reynolds, Okl., 344 P.2d 275, 280, for a slightly different statement of the above rule, and in which we reversed a grant of a new trial based on alleged newly discovered evidence.

This brings us to the subject of what are the established principles of law that are controlling in the granting and denying of a motion for new trial where the grounds of the motion are newly-discovered evidence.

Title 12, O.S.1961, § 651, provides that a new trial may be granted, on the application of the party aggrieved for a number of causes, one of which under Subd. 7 is "Newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

■ In the Vickers case, supra, we held that the rule regarding the granting of new trials on the ground of "newly-discovered evidence" exacts that the evidence fulfill the following requirements:

"(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence."

In the States Exploration Company case, supra (344 P.2d 275, 282), we said that all of these requirements must be present in order for a party to be entitled to a new trial on the ground of newly-discovered evidence.

■ And in Stills v. Mayor, Okl., 438 P.2d 477, this court held as follows:

"In order to entitle a party to a new trial on the ground of newly discovered evidence, among other things, the evidence relied upon must not be merely cumulative or contradictory to the former evidence but it must be such as will probably change the result in the event a new trial is granted."

One of the requirements in the above rule and statute is that the newly-discovered evidence must be such as could not have been discovered before the trial by the exercise of due diligence.

■ We have held that one seeking relief on motion for new trial on the grounds of newly-discovered evidence has the burden of establishing that his failure to produce such evidence at the trial was not due to lack of diligence on his part. Failure to make inquiry of persons likely to know the facts constitutes lack of diligence. Transport Insurance Company v. McAlister, Okl., 355 P.2d 576, and DuBoise v. DuBoise, Okl., 418 P.2d 924.

There is also the general rule that courts view with disfavor motions for new trials based on newly-discovered evidence. We have said that such applications are regarded with suspicion, and should be examined with caution. Vickers v. Phillip Carey Co., and States Exploration Company v. Reynolds, supra.

From our reading of the lengthy deposition of McEachern we must conclude that his testimony does not support the claim that defendant could have been on the Highway only a few seconds and that defendant's car did not have its lights on. It is clear from McEachern's testimony that he did not see and had no knowledge of the defendant's car before the collision.

■ McEachern did state that Neely was traveling south behind the Hockett pickup truck. This testimony would be merely cumulative of the prior testimony

of the plaintiff Mr. Hockett who stated, not once but a number of times, that Neely told him that he (Neely) was following Hockett (south) just before the collision. Also, McEachern's testimony would only contradict the prior testimony of Neely that he was traveling north, which testimony the plaintiff Mr. Hockett had already disputed at the ᵥrial. After a careful examination of McEachern's testimony, we cannot say that it would probably change the result of the trial. Newly discovered evidence that is merely cumulative or contradictory is not a sufficient basis for a new trial.

We now turn to the alleged newly-discovered evidence the witness Hoover would have furnished. As narrated above, Hoover's affidavit recites, that he was driving north, that defendant's car had no lights, and infers there was no one following him. His affidavit and the deposition of Landaker place him at the scene of the accident for a considerable time and reflect that he called Landaker to remove Hockett's pickup truck. Landaker testified, and there is no contrary proof, that Hockett requested Hoover to call Landaker; that Hoover and Hockett knew each other and lived in the same trailer camp; and that Hoover had been approached as a prospective witness at the trial.

▮ In view of these circumstances we must conclude that plaintiffs did not exercise reasonable diligence to discover Hoover as a witness and his testimony for use at the trial. Hockett surely would have recognized Hoover at the accident, and if (as inferred), by reason of shock he did not, then diligent inquiry of Landaker who had his truck, would have disclosed the presence of Hoover. Failure to make inquiry of persons likely to know the facts shows a lack of diligence.

Plaintiffs rely on Ralston v. Tucker, Okl., 324 P.2d 525, where the trial court granted a new trial on the ground of newly-discovered evidence and we affirmed. The circumstances in the cited case and those in the present case are not the same. A reading of the Ralston case will reveal that the newly-discovered evidence furnished proof explaining how and why the accident happened that was different from the former evidence. This distinction is clearly stated in the Vickers case (3rd paragraph of Syllabus), supra, where, after defining "cumulative evidence" the court states, " * * * but it is not cumulative if it relate to distinct and independent facts of a different character tending to establish the same ground of claim or defense." This cannot be said of the evidence in the present case.

It is our conclusion that the record does not disclose compliance with the requirements, supra, necessary to constitute the alleged discovered evidence "newly-discovered evidence."

The trial court erred in granting the plaintiffs new trials.

The order granting new trials is reversed, and the cause is remanded with instructions to vacate the order granting new trials, and to reinstate the judgments rendered on the verdict in defendant's favor.

All Justices concur.