Tanya Jean WILLIAMS, Appellee,

v.

SAFEWAY STORES, INCORPORATED, a foreign corporation, and Roy Coppock, Appellants.

No. 45628.

Supreme Court of Oklahoma.

Oct. 16, 1973.

Jack B. Sellers, Sapulpa, for appellee.

Thomas R. Brett, Jones, Givens, Brett, Gotcher & Doyle, Tulsa, for appellants.

BERRY, Justice:

Tanya Jean Williams [plaintiff] brought this action against Safeway Store's, Inc., and Roy Coppock, manager of Safeway's Crystal City store, for injuries allegedly sustained when she slipped in a puddle of water in the store and fell. The jury returned a verdict for plaintiff in the amount of $30,000.00, the trial court entered judgment accordingly, and defendants appeal.

Defendants first contend the trial court erred in overruling their demurrer to the evidence and motion for directed verdict. In passing upon a demurrer to the evidence, or motion for directed verdict, the court must consider as true all evidence favorable to the party against whom the motion is directed, together with all inferences reasonably to be drawn therefrom, and must disregard all conflicting evidence favorable to the movant. Condo v. Beal, Okl., 424 P.2d 48.

A storekeeper owes customers the duty to exercise ordinary care to keep aisles and other parts of the premises ordinarily used by customers in transacting business in a reasonably safe condition, and to warn customers of dangerous conditions upon the premises which are known, or which should reasonably be known to the storekeeper, but not to customers. Safeway Stores v. Whitehead, 190 Okl. 464, 124 P.2d 194; Safeway Stores, Inc. v. Keef, Okl., 416 P.2d 892. Knowledge of the dangerous condition will be imputed to the storekeeper if he knew of the dangerous condition, or if it existed for such time it was his duty to know of it, or if the condition was created by him, or by his employees acting within the scope of their employment. Chase v. Parry, Okl., 326 P.2d 809; Sooner Foods, Inc. v. Eggleston, Okl., 412 P.2d 621.

Here plaintiff alleged the water in which she slipped accumulated on the floor due to defendants' negligent operation and maintenance of a refrigerated produce case. Defendants contend the evidence was insufficient to support an inference they negligently operated and maintained the produce case, or the water in which plaintiff slipped came from the produce case, and that plaintiff was therefore required to show the water was placed on the floor by the store or its employees, or the water was on the floor long enough defendants could be held to have constructive notice of it, and plaintiff failed to do so.

The evidence indicates plaintiff knocked some onions from a gondola, picked them up and slipped in the water and fell while returning to the gondola. However, there is a conflict in the evidence concerning the size and location of the puddle and the actions of the store's employees with reference to the puddle after plaintiff fell.

Gregory Williams, plaintiff's brother-in-law at the time of the accident, testified the puddle was 3½ feet wide at the base of a produce case located across the aisle from the onion gondola, it extended into the aisle tapering off to 1 foot in width, and after the accident the manager asked some employees to place white towels or aprons at the base of the produce case.

Plaintiff testified the puddle extended into the aisle and its widest edge was against the base of the produce case.

Gladys Bryant testified she saw plaintiff fall, and saw a puddle about the size of her hand near the onion gondola, but did not make a detailed inspection.

Defendant Coppock, manager of the store, testified the produce case was 48 feet long and was divided into four 12 foot sections with a drain under each section, each section was cleaned out every 8 weeks, two or three times a year a drain would stop up causing water to flow into the aisle, and when this occurred cloth

would be placed along the base of the case to prevent water from seeping into the aisle.

Mr. McDaris, assistant manager of the store, testified every 5 or 6 months vegetable debris would stop up a drain under the produce case causing water to leak into the aisle, the drains were working properly on the day of the accident, he inspected the area 15 minutes before the accident and saw no water, and after the accident he saw a spot of water about the size of a silver dollar.

Mr. Simms, an employee at the store, testified he saw no water when he walked through the area 15 minutes before the accident, after the accident he saw a puddle ⅛th of an inch wide and two inches long near the onion gondola, and that drains under the produce case would stop up occasionally, but were not stopped up on the day of the accident.

■ We conclude the jury could reasonably have inferred the drains under the produce case occasionally stopped up causing water to flow into the aisle, defendants were aware of this fact, and, in light of the testimony concerning the size and location of the puddle, it was more likely the water in which plaintiff slipped came from a stopped up drain under the produce case than any other cause. The jury could then have found that in the exercise of ordinary care defendants should have taken some action to prevent water from running onto the aisle on occasions when a drain did stop up.

However, defendants argue the uncontradicted evidence introduced at this trial indicates drains under the produce case were not stopped up on the day of the accident.

■ In Mazda Oil Corp. v. Gauley, Okl., 290 P.2d 143, we held in paragraph 2 of the syllabus:

"An inference which may be reasonably drawn from circumstantial evidence is proof and does not fade away in the light of positive proof to the contrary."

Therefore, we conclude this contention is without merit.

■ Defendants next contend the trial court erred in overruling their motion for a mistrial on the ground plaintiff's counsel extracted mention of insurance during voir dire of the jury. This occurred when a juror stated his son had been involved in an automobile accident which was settled out of court in his favor. Plaintiff's attorney then asked whether that experience would affect his decision in this case and the juror replied:

"No, insurance company settled without any problems."

We conclude defendants were not prejudiced by this remark because it did not effectively suggest defendant had insurance coverage. Baker v. Knott, Okl., 494 P.2d 302.

Defendants next contend the trial court erred in refusing to give their requested instruction No. 2, which was as follows:

"You are instructed it is plaintiff's theory in this case that her fall and injury resulted from the defendants negligently permitting water to run from a produce refrigerator case to the floor. In this regard you are instructed that should you find the plaintiff's fall was caused by any other reason or by any other substance than water leaking from the refrigerator case, you are to return a verdict for defendants."

In this regard the trial court's instructions stated plaintiff alleged defendants had a duty to maintain the store floor in a safe condition, defendants maintained a produce box and on the date in question the drain was permitted to stop up and allow water to run into the aisle, defendants failed to remedy the leak, defendants maintained the floor in a dangerous and slick condition, plaintiff stepped in the leak and fell suffering injuries, and defendants were negligent in construction, inspection and maintenance, of the aisle in a reasonably safe condition in that they failed to inspect and repair the drain, failed to shut off the refrigerator and failed to discover and remove the water. The trial court also instructed the jury plaintiff had the burden of proof to establish by a prepon-

derance of the evidence the material allegations of the petition, and that the injuries, if any, were caused by the defendants' negligence as alleged, and were the direct and proximate result thereof. Other instructions were to the effect defendants were not insurers of the safety of business invitees, but had a duty to exercise reasonable and ordinary care for their safety, that this duty applies only to defects which are in the nature of hidden dangers, traps, snares, pitfalls and the like in that they would not be known to the invitee or observed by him in the exercise of ordinary care, and if plaintiff failed to exercise reasonable and ordinary care for her own safety the verdict should be for defendants.

■ We therefore conclude the instructions, when considered as a whole, correctly stated the applicable law and submitted to the jury the issues presented, and the trial court's refusal to give defendants' requested instruction No. 2 did not constitute reversible error. Safeway Stores, Inc. v. Keef, supra.

Defendants next contend the trial court erred in admitting into evidence, over defendants' objection, certain hospital and doctor bills, totaling $2,177.90, without evidence showing the necessity for the treatment arose out of plaintiff's fall in 1967, or that the charges were reasonable.

Two medical witnesses, plaintiff's family physician and the orthopedic surgeon who operated on plaintiff in 1969, testified at the trial.

From their testimony the jury could have inferred that as a result of the fall plaintiff suffered a fractured coccyx which did not heal properly thereby requiring an operation in August 1969 to remove the coccyx and tip of the sacrum, that plaintiff suffered an aggravation of the injury in 1971, suffered considerable pain from date of the injury to date of trial, will have difficulty in sitting for prolonged periods during the remainder of her life, will be required to take pain pills indefinitely, will need a medical checkup every 3 to 6 months to determine the effect of the pills,

and the prolonged pain has caused plaintiff to be nervous and depressed.

The bills which were introduced included hospital, doctor and electroencephalogram interpretation bills, totaling $1,243.35, for psychiatric treatment rendered to plaintiff in 1971, and a hospital bill for treatment rendered to plaintiff in 1971 for bronchitis. The jury was allowed to determine whether these expenses arose from plaintiff's fall.

The physician who rendered the psychiatric treatment did not testify at the trial. Plaintiff's personal physician, an osteopath, testified the fall in defendants' store caused plaintiff to be nervous and prior to the accident plaintiff had received treatment for a nerve condition resulting from an argument with her husband.

The orthopedic surgeon testified persistent pain will aggravate nervousness and most people with chronic pain become depressed but the injury to plaintiff's coccyx was not the cause of her basic personality and anxiety and it was unusual for one to be hospitalized for depression resulting from an injury similar to plaintiff's injury. He further stated that he was not able to connect the psychiatric treatment to any injuries resulting from the fall.

The record also reflects that subsequent to the fall plaintiff divorced her first husband, incurred financial problems, and was having marital problems with her second husband at the time she received the psychiatric treatment.

■ Where injuries are of a character requiring skilled and professional men to determine the cause and extent thereof, and the causal connection between subsequent treatment and the earlier injury, the scientific questions presented must necessarily be determined by testimony of skilled and professional persons. Matchen v. McGahey, Okl., 455 P.2d 52.

■ We conclude the evidence was insufficient to support a finding the expenses for psychiatric treatment necessarily resulted from plaintiffs' fall and we therefore conclude the trial court erred in admitting these bills into evidence.

Likewise, there was no evidence the hospitalization for treatment of bronchitis resulted from the fall and therefore we conclude the trial court erred in admitting into evidence the bill for that hospitalization.

It is impossible to determine to what extent, if any, defendants were prejudiced by the admission of these bills, and therefore remittitur would not be proper. St. Louis-San Francisco Railway Co. v. Tompkins, Okl., 409 P.2d 1.

However, from a review of the entire record we conclude this error did not affect the jury's finding of liability, and therefore there is no reason to grant defendants a new trial as to the whole case. Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369. Therefore, the judgment is reversed with directions to the trial court to grant defendants a new trial only for the assessment of damages, and to enter judgment for plaintiff for the amount so assessed.

DAVISON, C. J., WILLIAMS, V. C. J. and IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.