OSCN Found Document:LEWIS v. DUST BOWL TULSA, LLC

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 LEWIS v. DUST BOWL TULSA, LLC
2016 OK CIV APP 43
Case Number: 114090
Decided: 05/02/2016
Mandate Issued: 06/27/2016
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2016 OK CIV APP 43, __ P.3d __

 

TIMOTHY LEWIS and NANCY LEWIS, Plaintiffs/Appellants,
v.
DUST BOWL TULSA, LLC, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE MARY F. FITZGERALD, TRIAL JUDGE

AFFIRMED

Daniel E. Smolen, Lauren G. Lambright, SMOLEN, SMOLEN & ROYTMAN PLLC, Tulsa, Oklahoma, for Plaintiffs/Appellants
C. William Threlkeld, Brion B. Hitt, FENTON, FENTON, SMITH, RENEAU & MOON, Oklahoma City, Oklahoma, for Defendant/Appellee

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Plaintiffs Timothy Lewis and Nancy Lewis appeal the trial court's grant of summary judgment in favor of Defendant Dust Bowl Tulsa, LLC, as well as the denial of the Lewises' motion for reconsideration and new trial. This appeal comes to us on the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2015, ch. 15, app. 1, without appellate briefing. After review, we affirm.

FACTS AND PROCEDURAL HISTORY

¶2 This case arises out of injuries Plaintiff Timothy Lewis sustained while competing in a league bowling match at the Dust Bowl in Tulsa, Oklahoma, on June 4, 2013. Mr. Lewis and his wife, Nancy Lewis, filed this action on September 11, 2013, alleging that Mr. Lewis sustained injuries because the "Dust Bowl negligently failed to maintain a clean and safe floor in the bowling alley and failed to warn Mr. Lewis of a hidden and dangerous condition on the floor, even though the Dust Bowl knew or reasonably should have known of that condition."

¶3 The Lewises brought suit against the Dust Bowl for negligence, gross negligence, and loss of consortium. Mr. Lewis claims damages for physical and mental pain and suffering, physical impairment, disfigurement, lost income, impairment of earning capacity, medical expenses, loss of enjoyment, punitive damages, and prejudgment interest. Mrs. Lewis sought damages for loss of consortium, resulting from the loss of companionship, comfort, and affection of her husband due to his injuries.

¶4 In its answer, the Dust Bowl denied the Lewises' claims and asserted several affirmative defenses. In its subsequent motion for summary judgment filed March 17, 2015, the Dust Bowl denied it breached any duty to the Lewises because it "neither knew nor should have known about the splinter in the approach area on lane one" that caused Mr. Lewis' injuries. In their response, the Lewises contended there were "questions of fact for the jury precluding summary judgment." In particular, the Lewises claimed that there were "questions of whether the [Dust Bowl] sufficiently maintained, inspected, and removed hazards from the flooring of its lane approach area, sufficiently notified Plaintiff Timothy Lewis of risks and dangers associated with approaching the bowling lanes, and whether the [Dust Bowl] acted unreasonably." In its reply, the Dust Bowl argued that summary judgment was proper because the Lewises "offered no evidence that [the] Dust Bowl created the splinter, knew about the splinter in sufficient time to remedy it, or should have [known] about the splinter prior to [Mr.] Lewis' accident." Based on this reasoning, the Dust Bowl urged that it "breached no duty owed to [the Lewises] and is entitled to summary judgment."

¶5 By notice to the parties on May 11, 2015, the trial court granted the motion for summary judgment and directed the Dust Bowl to prepare the order reflecting the court's ruling. The Lewises filed a motion for reconsideration and new trial on June 4, 2015, pursuant to "Rules for District Courts, Rule 17 and 12 O.S. § 651, et seq." The motion was based, in part, on evidence not submitted with their original summary judgment materials--the affidavit of Mr. Lewis' son, Chandler Lewis. The affidavit stated that approximately three weeks after Mr. Lewis' incident at the Dust Bowl, a Dust Bowl employee told Chandler Lewis that "management had been aware of a defect in the lane approach area prior to the incident." The Lewises argued that this additional testimony "create[d] a question of fact regarding whether the [Dust Bowl] had actual or constructive knowledge of the defect at issue [making] the issue of whether the [Dust Bowl] met its duty of care to Mr. Lewis a question for a jury to decide." Additionally, the Lewises claimed that "the issue of whether or not the [Dust Bowl] had actual or constructive knowledge of defects in the flooring of its lane approach area could not have been resolved on summary judgment" because discovery was not yet complete and additional discovery was needed to resolve the issue of notice.[1]

¶6 The Dust Bowl filed a response to the Lewises' motion for reconsideration and new trial, contending that the Lewises failed to satisfy the requirements necessary to grant a new trial based on newly-discovered evidence. The Dust Bowl argued that the Lewises were not entitled to a new trial pursuant to 12 O.S.2011 § 651 because they "failed to exercise due diligence with regard to the testimony of Chandler Lewis."

¶7 On June 15, 2015, a journal entry of judgment was filed, pursuant to the court's May 11, 2015, ruling, granting the Dust Bowl's motion for summary judgment "as a matter of law," noting that "[t]here [was] no evidence that the [Dust Bowl] had actual or constructive notice of the condition."[2] An order denying the Lewises' motion for reconsideration and new trial was filed on August 3, 2015.

¶8 The Lewises appeal both the grant of summary judgment and the denial of their motion for reconsideration and new trial.

STANDARD OF REVIEW

¶9 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Davis v. Leitner, 1989 OK 146, ¶ 9, 782 P.2d 924. When reviewing a grant of summary judgment, we must view all inferences and conclusions to be drawn from the evidence in a light most favorable to the party opposing the motion. Id.

¶10 Although a trial court considers factual matters in deciding a summary judgment motion, its ultimate decision is purely legal: "whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. Our standard of review on appeal is therefore de novo. Id.

¶11 "A trial court's denial of a motion for new trial is reviewed for abuse of discretion." Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100. "Where, as here, our assessment of the trial court's exercise of discretion in denying [ ] a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of- discretion question is settled by our de novo review of the summary adjudication's correctness." Id.

ANALYSIS

¶12 The Lewises argue that it was error to grant summary judgment and to deny their motion for reconsideration and new trial because there is a question of fact regarding whether the Dust Bowl had actual or constructive notice of the defect in the flooring in the approach area in lane one.

¶13 "It is axiomatic that the mere fact that an injury occurs carries with it no presumption of negligence." Gillham v. Lake Country Raceway, 2001 OK 41, ¶ 7, 24 P.3d 858. To establish a prima facie case of negligence, a plaintiff must show: "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." Smith v. City of Stillwater, 2014 OK 42, ¶ 22, 328 P.3d 1192.

¶14 In premises liability cases, the duty a defendant landowner owes a plaintiff is determined by his entry status. It is undisputed that Mr. Lewis was at the Dust Bowl's premises as an invitee, that is: "[o]ne rightfully upon another's premises for purposes in which the owner has some beneficial interest" or "a mutuality of business interest." Foster v. Harding, 1967 OK 46, ¶ 18, 426 P.2d 355. Toward an invitee, a property owner has a "duty to exercise ordinary care to keep its premises in a reasonably safe condition for use of its invitees and a duty to warn invitees of dangerous conditions upon premises that are either known or should reasonably be known by the owner." Phelps v. Hotel Mgmt. Inc., 1996 OK 114, ¶ 6, 925 P.2d 891; see also Oklahoma Uniform Jury Instructions Civil (OUJI-CIV) No. 11.10. This duty "applies to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like which are not known to the invitee and would not be observed by him in the exercise of ordinary care." Southerland v. Wal-Mart Stores, Inc., 1993 OK CIV APP 12, ¶ 4, 848 P.2d 68 (citing Beatty v. Dixon, 1965 OK 169, ¶ 9, 408 P.2d 339); see also Phelps, 1996 OK 114, ¶ 6; OUJI-CIV Nos. 11.10, 11.11.

¶15 "The invitor is not, however, an insurer of the safety of its invitees and is not required to prevent all injury occurring on the property." Young v. Bob Howard Auto., Inc., 2002 OK CIV APP 80, ¶ 6, 52 P.3d 1045 (citing Taylor v. Hynson, 1993 OK 93, ¶ 16, 856 P.2d 278); see also Copeland v. The Lodge Enters., Inc., 2000 OK 36, ¶ 11, 4 P.3d 695. "[T]he basis of the invitor's liability rests on the owner's superior knowledge of the danger." Southerland, 1993 OK CIV APP 12, ¶ 4. '"An invitor cannot be held responsible unless it be shown that he/she had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to give warning of its presence." Taylor, 1993 OK 93, ¶ 16 (quoting Rogers v. Hennessee, 1979 OK 138, ¶ 9, 602 P.2d 1033). "Knowledge of the dangerous condition will be imputed to the [invitor] if he knew of the dangerous condition, or if it existed for such time it was his duty to know of it, or if the condition was created by him, or by his employees acting within the scope of their employment." Williams v. Safeway Stores, Inc., 1973 OK 119, ¶ 3, 515 P.2d 223.

¶16 We must determine whether the evidentiary materials submitted by the Lewises in response to the Dust Bowl's motion for summary judgment were sufficient to create "disputed material (on the merits) facts in issue" thereby defeating the motion for summary judgment. Copeland, 2000 OK 36, ¶ 9.

¶17 In support of its undisputed facts, the Dust Bowl attached to its motion: (1) portions of Mr. Lewis' deposition; (2) the affidavit of Michael Sparks, the person "in charge of the bowling operations at the Dust Bowl, which includes maintenance of the lanes, approach area, and bowling equipment"; and (3) the affidavit of Erika Estes, the assistant manager of the Dust Bowl.

¶18 Citing specific portions of Mr. Lewis' deposition testimony, the Dust Bowl asserted the following facts as undisputed in its motion for summary judgment. The Lewises' response to each follows in brackets.

· "As [] Lewis was sliding in the approach area to release his ball, a splinter of wood embedded in his left shoe, causing him to fall." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact as required by District Court Rule 13(b).]

· "Lewis' accident at the Dust Bowl occurred on Tuesday, June 4, 2013." [Admitted.]

· "Lewis' accident occurred on lane one ("lane 1")." [Admitted.]

· "In the fifth frame, when Lewis' accident occurred, three or four of Lewis' team members bowled on lane 1 prior to the accident." [Admitted.]

· "Lewis had no concerns about the approach area on the day of his accident before he started bowling, and he did not develop any concerns about the approach area before his accident." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

· "Lewis did not notice any problems in the approach area before his accident." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

· "To Lewis, the approach area appeared well-maintained." [Does not dispute that he testified to this, but disputes that the area was well-maintained and refers to his testimony that he "is not a flooring expert."]

· "Before the accident, neither his team members nor the opposing team members expressed any concerns about the approach area." [Disputed, because these invitees have no duty to inspect the area, but the Lewises provide no reference to the record to controvert this statement of fact.]

¶19 Citing the attached affidavits of Dust Bowl employees Michael Sparks and Erika Estes, who were working on the date of the incident, the Dust Bowl also asserted the following facts as undisputed in its motion for summary judgment. The Lewises' response to each follows in brackets.

· "Lane 1 was cleaned at approximately 3:00 p.m., on the day of Lewis' accident." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

· "The approach area on lane 1 was dust mopped after it was cleaned." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.].

· "If there was a splinter in the floor then it would hang on the dust mop." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

· "On the day of Tim Lewis' accident there were no reports of any issues with the approach area on lane 1 by any bowlers or Dust Bowl employees." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

· "Dust Bowl employees were instructed to look for any lane or approach area issues in need of repair." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

· "Two people bowled on lane 1 on June 4, 2013, from approximately 4:45 p.m. until 5:25 p.m., and they did not report any problems with the approach area on lane 1." [Disputed, but the Lewises provide no reference to the record to controvert this statement of fact.]

¶20 In their response to the Dust Bowl's statement of undisputed facts, the Lewises attached: (1) portions of Mr. Lewis' deposition and (2) the summary opinion report of Gary S. Nelson, Ph.D., CSP. In their summary judgment response, the Lewises suggest that: (1) the approach area in lane one might not have been cleaned and dust mopped on the date of Mr. Lewis' accident; (2) a "dust mop [might not] uncover a splinter in the floor"; (3) the Dust Bowl employees might not have "followed their training as diligently as the [Dust Bowl's] management might hope"; and (4) a splinter might not "always be positioned in a way that would provide an invitee with an opportunity to notice the defect and report it to management." The Lewises, however, failed to provide any evidentiary materials supporting these contentions. Instead, they suggest "the fact that a three inch [sic] long splinter of wood from the approach area had suddenly imbedded itself into [Mr. Lewis'] left bowling shoe tends to defeat any inference that any preventive tasks were performed on the day of the accident." The summary opinion report of the Lewises' expert, Gary S. Nelson, contains similar conjecture.[3] For example, Dr. Nelson says in his report that the "Dust Bowl apparently failed to properly conduct . . . critical [hazard] inspections of their premises floor." (Emphasis added.) Importantly, Dr. Nelson explains:

[T]he term apparently means that, while direct evidence of an apparent failure has yet to be verified through current discovery, . . . had the action discussed taken place in a reasonable and proper manner (in the absence of negligence) . . . the hazards associated with the incident that occurred in this matter would have been prevented or effectively controlled such that the incident itself would not have occurred.

¶21 The evidentiary materials submitted by the Lewises in response to the Dust Bowl's summary judgment motion do not create "disputed material (on the merits) facts in issue." Copeland, 2000 OK 36, ¶ 9. Although the Lewises are not required to produce forensic evidence, "the mere contention that material facts are in dispute is not sufficient to defeat a plea for summary judgment." Id.; see also First Nat'l Bank & Trust Co. of Vinita, Okla. v. Kissee, 1993 OK 96, ¶ 8, 859 P.2d 502 (quoting Mengel v. Rosen, 1987 OK 23, ¶ 9, 735 P.2d 560 ("A party cannot merely rely upon conjecture or suppositions, and assert 'that facts exist or might exist, [because such] is not sufficient to create a substantial controversy when the party moving for summary judgment has introduced evidence showing the existence of facts which would preclude recovery by the party against whom the motion was made."' (alteration in original)).

¶22 The uncontroverted evidence of record in this case demonstrates that the Dust Bowl had neither actual nor constructive knowledge of any condition in the approach area in lane one. The record shows that the Dust Bowl cleaned and dust mopped the approach area in lane one around 3:00 p.m. on June 4, 2013. According to Michael Sparks, the Dust Bowl's head of operations in charge of maintaining the lanes and approach areas, "[i]f there was a splinter in the floor then it would hang on the dust mop." "Dust Bowl employees were [also] instructed to look for any lane or approach area issues in need of repair." No Dust Bowl employee made a report of any issues with the approach area in lane one on June 4, 2013, and there were no reports of any issues with the approach area in lane one by any bowlers who used that lane. "Two people bowled on lane 1 on June 4, 2013, from approximately 4:45 p.m. until 5:25 p.m." and "[t]hey did not report any problems with the approach area on lane 1." Mr. Lewis competed in a league bowling match at approximately 6:30 p.m. on June 4, 2013.[4] His accident occurred in the approach area in lane one during his fifth frame. Three or four of Mr. Lewis' team members bowled on lane one before the accident, and neither Mr. Lewis nor any of his team members expressed any concerns regarding the approach area. Mr. Lewis testified that "the approach area appear[ed] to be well maintained" and he did not notice any problems with it before the incident.

¶23 The Dust Bowl discusses the case of Stephenson v. B.I.G. Enterprises, Inc., No. 280778, 2008 WL 4899350 (Mich. Ct. App. Nov. 4, 2008), a similar premises liability case in which the court found that a bowling alley did not have knowledge of a defective condition in one of its lane approach areas. Like Mr. Lewis, the plaintiff in Stephenson tripped and fell in the approach area of a bowling lane after "a sliver of wood impaled [her] shoe" when she was sliding to release her ball. Id. at *1. The plaintiff sued, claiming the bowling alley was not properly maintained. Id. The bowling alley moved for summary judgment, arguing there was no evidence that it had notice of the defective condition. Id. The trial court, finding that the bowling alley did not have notice of the condition, granted summary judgment in its favor. Id. The plaintiff appealed. Id. She contended, in part, that the trial court erred in finding "there was no question of fact as to whether [the bowling alley] knew or should have known about the dangerous condition" that caused her injury. Id.

¶24 The appellate court affirmed the trial court's decision, finding that the bowling alley had no constructive knowledge of the condition. Id. The court noted that "[c]onstructive knowledge arises when the [the condition] is of such a character or has existed a sufficient length of time that [the defendant] should have knowledge of it."[5] Id. at *2 (quotation marks omitted and alteration in original). The court determined that the bowling alley did not have constructive knowledge because: (1) "the splinter was not of such a character that it would be readily observable" and (2) the splinter would not have existed for a sufficient length of time such that the bowling alley should have had notice of it and have remedied its condition. Id. at *3. In making these determinations, the court emphasized the following facts: (1) the plaintiff had "not notice[d] anything out of the ordinary" in the approach area; (2) the splinters were not usually visible and were primarily detected by dust mopping; (3) before the plaintiff's incident, "a women's league [had] bowled on the same lane[ ] with no complaints about the condition of the approach [area]"; and (4) the plaintiff bowled for at least one frame before the incident. Id. at *2-3. The court reasoned that under these facts "[a] jury would have to speculate to conclude that the dangerous condition was present for a sufficient amount of time to impose constructive notice," which "is insufficient to defeat a motion for summary disposition." Id. at *3. Cf. Beatty v. Dixon, 1965 OK 169, ¶ 17, 408 P.2d 339 ("[A]n inference of negligence . . . must be based on something more than mere speculation or conjecture.").

¶25 The Stephenson case is not, of course, binding on this Court, but the facts in the present case warrant a similar conclusion. There is no evidence the Dust Bowl had actual notice of any defect in lane one. Additionally, based on the uncontroverted facts, "a jury would have to speculate to conclude that the [condition] was present for a sufficient amount of time to impose constructive notice." Stephenson, 2008 WL 4899350 at *3.

¶26 In response to Stephenson, the Lewises submit that knowledge of the dangerous condition may be inferred, thus defeating the motion for summary judgment. They cite Hollerbach v. Target, 443 Fed. Appx. 936 (6th Cir. 2011) for the proposition that "knowledge of a hazardous condition created by a premises possessor may be inferred." Id. at 938 (citing Hulett v. Great Atl. & Pac. Tea Co., 299 N.W. 807, 810 (1941)). Hollerbach relies on the holding in Hulett: "'As our Supreme Court has explained, it is typically not necessary for a plaintiff to prove that the defendant had actual or constructive notice of a hazardous condition where the defendant or its agents actively created the hazardous condition . . . . This is because knowledge of the alleged hazardous condition created by the defendant itself is inferred.'" Id. at 939. We find ourselves unable to agree with this argument for the very basic reason that the record is devoid of any suggestion that the Dust Bowl created the condition giving rise to this lawsuit. There is no evidentiary basis on which to argue that the requisite knowledge by the Dust Bowl of the dangerous condition may be inferred because they created it.

¶27 After reviewing the record submitted in this summary judgment appeal, we conclude that the Lewises have presented no evidence disputing the Dust Bowl's showing that it did not create the splinter, had no actual knowledge of the splinter, and cannot be charged with constructive knowledge of the splinter because it existed for sufficient time for the Dust Bowl to notice it and fix it (or warn of it) before Mr. Lewis' accident.

¶28 The Lewises filed their motion for reconsideration and new trial pursuant to 12 O.S.2011 § 651, arguing that the Lewises' "recent" discovery of Chandler Lewis' statements in his attached affidavit constituted "newly acquired evidence." The decision to grant or deny "a new trial on the ground of newly discovered evidence rests to a large extent in the discretion of the trial court, whose decision will not be disturbed . . . where no abuse of such discretion is shown." Richardson v. Davis, 1968 OK 30, ¶ 9, 439 P.2d 949. The Oklahoma Supreme Court "view[s] with disfavor motions for new trial based on newly-discovered evidence [and] ha[s] said that [such motions] should be examined with caution." Hunter v. Hunter, 1970 OK 106, ¶ 19, 470 P.2d 1020.

¶29 To justify granting a new trial based on newly-discovered evidence, the evidence must satisfy all of the following requirements:

"(1) it must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; [and] (6) it must not merely impeach or contradict the former evidence."

Lucas v. Hockett, 1970 OK 78, ¶¶ 23-24, 469 P.2d 237 (emphasis added) (quoting Vickers v. Phillip Carey Co., 1915 OK 557, ¶ 4, 151 P. 1023). And, one who seeks "relief on a motion for new trial on the ground of newly-discovered evidence has the burden of establishing that his failure to produce such evidence at the trial was not due to a lack of diligence on his part." Hunter, 1970 OK 106, ¶ 18. "Failure to make inquiry of persons likely to know the facts constitutes lack of diligence." Lucas, 1970 OK 78, ¶ 27.

¶30 The Lewises have not shown in their motion for new trial that, despite due diligence on their part, they could not have produced Chandler Lewis' testimony earlier. See Hunter, 1970 OK 106, ¶ 18. The Lewises, in fact, acknowledged in their motion, and it is stated in Chandler Lewis' affidavit, that Chandler Lewis had a conversation with a Dust Bowl employee about a defect three weeks after Mr. Lewis' accident in 2013, but they claim this information was not available when they responded to the motion for summary judgment in April 2015, almost two years after the accident. The Lewises did not explain why this information was unavailable or why Mr. Lewis' son did not convey this information to the Lewises nearly two years earlier.[6] We conclude the trial court correctly found the affidavit fails to satisfy Oklahoma's requirements for newly-discovered evidence[7] and its denial of the post-judgment motion was not an abuse of discretion.

CONCLUSION

¶31 Based on this summary judgment record, the trial court correctly granted the Dust Bowl's motion for summary judgment and correctly denied the Lewises' motion for reconsideration and new trial. We affirm the trial court's decisions.

¶32 AFFIRMED.

GOODMAN, C.J., and FISCHER, J., concur.

FOOTNOTES

[1] Oklahoma District Court Rule 13(d) states: "Should it appear from an affidavit of a party opposing the motion that for reasons stated the party cannot present evidentiary material sufficient to support the opposition, the court may deny the motion for summary judgment or summary disposition without prejudice or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had . . . ." 12 O.S. Supp. 2013, ch. 2, app. We note the docket sheet indicates that the Lewises filed an unopposed motion to extend the deadline to respond to the [Dust Bowl's] motion for summary judgment. That motion, however, was not included in the appellate record and it does not appear that the motion was filed for the purpose of conducting additional discovery. For example, in its response to the Lewises' motion for reconsideration and new trial, the Dust Bowl asserted that the Lewises' "failed to comply with Rule 13(d)" and that their discovery "argument c[ame] to[o] late."

[2] While this journal entry did not specifically dispose of the gross negligence claim or the loss of consortium claim, it is a final order. Under Oklahoma law, "[a]n order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment . . . is a final order." 12 O.S.2011 § 953. The viability of Mrs. Lewis' loss of consortium claim depends on the success of Mr. Lewis' negligence claim. See Laws v. Fisher, 1973 OK 69, ¶ 9, 513 P.2d 876 (A spouse's "right to recover [for loss of consortium] is dependent on (derivative from) the [injured spouse's] right to recover."). Similarly, if the Lewises are unable to prove ordinary negligence, they cannot prove gross negligence--a heightened degree of negligence. See Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC, 2014 OK 106, n. 13, 341 P.3d 75 ("[G]ross negligence is the same as a negligence claim, differing only as to the degree."); Fox v. Oklahoma Mem'l Hosp., 1989 OK 38, ¶ 5, 774 P.2d 459 (For a gross negligence claim, "[t]he question is whether the negligence . . . was either so flagrant, so deliberate, or so reckless that it is removed from the realm of mere negligence."). In resolving the negligence claim, the judgment thus also resolved the gross negligence and loss of consortium claims.

[3] We note the summary opinion report does not controvert any of the Dust Bowl's undisputed material facts. Dr. Nelson, in effect, concludes that the fact the incident occurred demonstrates that the Dust Bowl failed to properly inspect the approach area in lane one. The report, however, does not create a question regarding whether the Dust Bowl had actual or constructive knowledge of the defect.

[4] We note this fact was not included in the Dust Bowl's material facts, but it is consistent with each party's respective statement of the case.

[5] Oklahoma's standard is similar. See Williams v. Safeway Stores, Inc., 1973 OK 119, ¶ 3, 515 P.2d 223 ("Knowledge of the dangerous condition will be imputed to the [invitor] if he knew of the dangerous condition, or if it existed for such time it was his duty to know of it, or if the condition was created by him, or by his employees acting within the scope of their employment.").

[6] For the same reason, we reject the Lewises' contention that additional time for discovery should be allowed. The case had been pending for 21 months when the motion for new trial was filed, and no request had been made in the summary judgment process pursuant to Rule 13(d) of Rules for the District Court, 12 O.S. Supp. 2013, ch. 2, app., for additional time to develop discovery responsive to the motion.

[7] We note further that this affidavit does not raise an issue of material fact regarding whether the Dust Bowl had actual or constructive knowledge of the splinter in lane one. The affidavit states that a bartender at the Dust Bowl told him that the Dust Bowl: (1) "had been aware of a defect in the lane approach area prior to the incident on June 4, 2013," (2) "had received an estimate to repair the defect for approximately $60,000.00," and (3) "had not repaired the defect because it would have been too expensive." However, the affidavit does not provide any evidence that the Dust Bowl had knowledge of the offending defect in the approach area in lane one. The affidavit refers only to "a defect" without specifying its nature and fails to identify in which lane approach area the defect existed or in what temporal proximity to this incident. And, it is unclear whether the affidavit, based on a conversation Chandler Lewis had with a Dust Bowl employee, is capable of conversion to admissible evidence at trial. If the Dust Bowl employee is unable to testify, the information she provided to Chandler Lewis would be excluded as inadmissible hearsay. See Elledge v. Staring, 1996 OK CIV APP 161, ¶¶ 7-8, 939 P.2d 1163 (emphasizing that an affiant could not testify at trial to statements in his affidavit made to him by someone else because those statements would be inadmissible hearsay).






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 12, 848 P.2d 68, 64 OBJ 756, Southerland v. Wal-Mart Stores, Inc.
Discussed at Length
 2002 OK CIV APP 80, 52 P.3d 1045, YOUNG v. BOB HOWARD AUTOMOTIVE, INC.
Discussed
 1996 OK CIV APP 161, 939 P.2d 1163, 68 OBJ 1779, ELLEDGE v. STARING
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 23, 735 P.2d 560, 58 OBJ 1049, Mengel v. Rosen
Discussed
 1989 OK 38, 774 P.2d 459, 60 OBJ 628, Fox v. Oklahoma Memorial Hosp.
Discussed
 1989 OK 146, 782 P.2d 924, 60 OBJ 2833, Davis v. Leitner
Discussed
 1993 OK 93, 856 P.2d 278, 64 OBJ 2172, Taylor v. Hynson
Discussed at Length
 1993 OK 96, 859 P.2d 502, 64 OBJ 2159, First Nat. Bank and Trust Co. of Vinita v. Kissee
Discussed
 1915 OK 557, 151 P. 1023, 49 Okla. 231, VICKERS v. PHILIP CAREY CO.
Discussed
 2001 OK 41, 24 P.3d 858, 72 OBJ 1495, GILLHAM v. LAKE COUNTRY RACEWAY
Discussed
 1965 OK 169, 408 P.2d 339, BEATTY v. DIXON
Discussed at Length
 1967 OK 46, 426 P.2d 355, FOSTER v. HARDING
Discussed
 1968 OK 30, 439 P.2d 949, RICHARDSON v. DAVIS
Discussed
 1970 OK 78, 469 P.2d 237, LUCAS v. HOCKETT
Discussed at Length
 1970 OK 106, 470 P.2d 1020, HUNTER v. HUNTER
Discussed at Length
 1973 OK 69, 513 P.2d 876, LAWS v. FISHER
Discussed
 1973 OK 119, 515 P.2d 223, WILLIAMS v. SAFEWAY STORES, INCORPORATED
Discussed at Length
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1996 OK 114, 925 P.2d 891, 67 OBJ 3045, Phelps v. Hotel Management, Inc.
Discussed at Length
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATER
Discussed
 2014 OK 106, 341 P.3d 75, TRINITY BAPTIST CHURCH v. BROTHERHOOD MUTUAL INSURANCE SERVICES, LLC
Discussed
 1979 OK 138, 602 P.2d 1033, ROGERS v. HENNESSEE
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 651, New Trial - Definition - Causes for
Discussed at Length
 12 O.S. 953, Final Order Defined
Cited